# Richmond.

## JACKSON v. PLEASANTON AND PLEASANTON v. JACKSON.

### March 12, 1903.

1. TRUSTS AND TRUSTEES—*Excessive Amount Secured by Deed—Fraud.*— If the evidence shows that a deed of trust was fraudulently obtained by an agent from his principal for a larger amount than was due, the deed should stand as a security for only the amount actually due.

2. PRINCIPAL AND AGENT—*Fraud of Agent—Compensation—Title Taken by Agent—Rents.*—An agent to purchase real estate, who takes title to himself, and, claiming as owner, uses and enjoys the land, and refuses to surrender possession to his principal upon the offer of the latter to reimburse him, with interest, for all advances made in securing title to the property and to assume payment of the unpaid purchase money, cannot recover of his principal compensation for making the purchase. The bad faith of the agent deprives him of the right to compensation. So, also, where an agent has retained possession of land, and of personal property thereon bought and paid for by his principal, and has used and enjoyed the same as his own under a claim of right,· and has refused to deliver possession thereof to his principal until the same has been recovered from him by the principal after lengthy litigation, the agent is properly chargeable with a reasonable annual compensation for the use and occupation of the land, and with the value of the personal property not delivered to the principal.

3. APPEAL AND ERROR—*Commissioner's Report—Objection for First Time.* An objection to an allowance of an item in a master commissioner's report cannot be raised for the first time in the appellate court.

4. RECOVERY OF LAND—*Growing Crops—Rents,*—Where, upon recovery of land, the plaintiff gets the growing crops, it is not error to refuse to charge the defendant with rent for the preceding part of that year.

5. PRINCIPAL AND AGENT—*Suit to Recover Land—Rents—Taxes.*—In a suit by a principal against his agent to recover land purchased by the latter for the former, it is not error to charge the agent with

a reasonable rent for the land while in his possession, instead of abating the interest on the purchase price of the land until the principal obtained possession. Nor is it error to allow the agent credit for taxes paid on the land while he was in possession.

6. EQUITY PRACTICE—*Deed of Trust to Secure Debt—Enforcement—Ascertaining Amount Due.*—It is error to decree the sale of real estate to pay a debt secured by a deed of trust thereon until the amount of such debt has been properly ascertained. In the case in judgment, the amount originally secured was fixed, but, on account of subsequent dealings between the parties, it appears that there is a balance of account in favor of the debtor which should be allowed as a credit on the debt secured.

Appeals by both complainants and defendants from several decrees of the Circuit Court of Goochland county in two chancery suits heard together, one under the style of *Pleasanton* v. *Jackson* and the other of *Pleasanton* v. *Jackson and Another.*

*Reversed.*

The opinion states the case.

*Guy & Guy,* for Jackson.

*A. K. & D. H. Leake* and *E. Hunn, Jr.,* for Pleasanton.

CARDWELL, J., delivered the opinion of the court.

The appeal first above named is from a decree of the Circuit Court of Goochland county entered June 19, 1901, in the two causes of *Pleasanton* v. *Jackson,* and *Pleasanton* v. *Jackson and Haines, Trustees,* heard together; and the second is from that decree and also a decree in said causes entered September 11, 1901. Both appeals having been argued and submitted together here, they will be disposed of in this opinion.

It appears that in October, 1894, Alfred Pleasanton and J. T. Jackson, citizens of Philadelphia, Pa., entered into an agreement whereby Jackson, whose occupation was that of a real estate agent, was to purchase for Pleasanton three certain farms in Goochland county, Va., viz: "Bolling Hall," "Poca-

hontas" and "Woodville." Jackson was to advance the money necessary to make these purchases, and Pleasanton, then without means, but expecting to come into the possession of a large estate, was to repay Jackson all advances made by him in securing the properties, with interest on such advances from their date, and also to compensate Jackson for his services, &c.

Jackson purchased "Bolling Hall" at the price of $18,000, upon the terms of $9,000 cash, the balance to be paid in three years, with interest payable semi-annually, and took the deed of conveyance to himself, and reconveyed the property to A. K. Leake and William Miller, Trustees, to secure the deferred payment of $9,000, and six notes for $270 each representing the semi-annual interest on the principal. He purchased "Pocahontas" and "Woodville" at the price of $9,500, upon the terms of $1,000 in cash, and the balance $8,500 on a credit, to be secured by trust deed. These two properties were conveyed by the owner to Pleasanton, and upon the representation of Jackson that they had cost $11,000 instead of $9,500, Pleasanton reconveyed them to one Haines, trustee, to secure the credit part of the purchase money, and to secure a note for $2,500, the amount which Pleasanton supposed that Jackson had paid as the cash payment for the properties.

Upon ascertaining the facts as to prices at which Jackson procured the three farms in question, Pleasanton instituted the first of the suits above named to compel Jackson to convey "Bolling Hall" to him, upon his reimbursing Jackson the cash payment of $9,000, with interest advanced by Jackson, and assuming the deferred payment of $9,000, and the interest thereon, secured by trust deed on the property. And Jackson, having required Haines, trustee, to advertise for sale "Pocahontas" and "Woodville" to satisfy the note of Pleasanton secured thereon for $2,500, Pleasanton instituted the second of the above mentioned suits to enjoin the sale, upon the ground that the true amount he owed on the note was $1,000 instead of

$2,500, and the injunction prayed was granted. In the first named of said suits the Circuit Court, by its decree of May 4, 1896, held that Jackson was the agent of Pleasanton at the time of the purchase of "Bolling Hall"; that the price paid therefor was $18,000, and not $20,000, as Jackson claimed; and that Jackson should convey the property to Pleasanton upon being reimbursed the $9,000 he had paid on the purchase price, and the property should then be held by Pleasanton subject to the lien of the trust deed to secure $9,000, the credit portion of the purchase money which Jackson had given for the property, and likewise subject to a lien in favor of Jackson for such sum as might be ascertained to be due to him as compensation for the purchase of the property, provided it should be ascertained that compensation for such services had not been included in a bond of $5,000, which Pleasanton had executed to Jackson on the 6th of March, 1895. Upon an appeal from that decree by Jackson to this court it was held that the Circuit Court did not err in so far as it adjudged that Jackson had been acting as the agent of Pleasanton in the purchase of "Bolling Hall," but did err in expressing doubt as to whether compensation for Jackson's services in the purchase had been included in the said bond of $5,000, and in directing an issue to be made up and tried whether such compensation was embraced in said bond; and the decree of May 4, 1896, was accordingly amended, and as amended affirmed. *Jackson. v. Pleasanton,* 95 Va. 654, 29 S. E. 680.

On September 12, 1898, the two causes were again heard together in the Circuit Court, and a decree entered referring them to a commissioner to ascertain and report what compensation, if any, should be allowed Jackson from Pleasanton for securing and purchasing "Bolling Hall," "Pocahontas" and "Woodville," and what, if anything, should be paid Jackson for the growing crops on "Bolling Hall" for the year 1898. This decree, not having been executed, the Circuit Court made a

further decree in the causes at its April term, 1899, directing the commissioner, in addition to the accounts ordered in the former decree, to state and report all matters in dispute between Pleasanton, as principal, and Jackson, as his agent, in and about the purchase of "Bolling Hall," "Pocahontas" and "Woodville" . . . and showing what was the correct balance due from Pleasanton to Jackson, or from the latter to the former, after allowing each all proper payments and offsets.

The commissioner to whom the causes were referred returned with his report elaborate and carefully prepared statements and alternate statements of the accounts between the parties, the result of which, as given in statement "F," and recommended by the commissioner to the court for adoption, showed a balance due from Pleasanton to Jackson of $4,642.98, including interest to January 1, 1900.

To this report Pleasanton filed four exceptions: First, because the commissioner allowed Jackson commissions for purchasing "Bolling Hall," "Pocahontas" and "Woodville" for Pleasanton; second, because Jackson's claim for growing crops on "Bolling Hall" for the year 1898 was allowed; third, because the commissioner offset Jackson's claim for improvements against Pleasanton's claim for rent, &c.; and fourth, because no allowance was made Pleasanton for $1,800 cash paid by him through Jackson to Ambrose Ford, lessee of "Bolling Hall" for Ford's personal property thereon, which, it is claimed, Jackson took possession of and refused to deliver to Pleasanton; and further, because a number of other smaller items claimed by Pleasanton were not allowed by the commissioner.

Upon the hearing of the causes on the pleadings, the deposition of witnesses, the report of Commissioner Miller, and the four exceptions to the report, filed by Pleasanton, the Circuit Court, by its decree of June 19, 1901, held that in the purchase of "Pocahontas" and "Woodville," Jackson was the agent of Pleasanton; that the purchase price for these properties was

$9,500, and not $11,000, as claimed by Jackson; that the deed of trust given by Jackson thereon to Haines, trustee, securing $2,500, and notes for the annual interest thereon should only stand as security for $1,000, with interest from the date of the trust deed April 4, 1895, subject to a credit of $75.00, one of the semi-annual interest notes paid by Pleasanton April 4, 1896; and with reference to the exceptions to the report of Commissioner Miller the decree is as follows:

"And the court . . . doth sustain the first exception to the report of Commissioner P. G. Miller, in so far as it allows J. T. Jackson commissions for selling 'Bolling Hall,' but doth, in all other respects, overrule the said exception. And the court doth sustain the second exception to the commissioner's report, and doth disallow Jackson's claim for growing crops on 'Bolling Hall' for the year 1898; and the court, being of opinion that the said Alfred Pleasanton should be allowed rent for the use and occupation of 'Bolling Hall,' except for the year 1898, doth adjudge, order and decree that the said Pleasanton be entitled to $800 per year as rent for 'Bolling Hall' during the period that the said Jackson had possession thereof, except for the portion of the year 1898, and doth disallow said Jackson's claim for improvements stated in Account 'D' of Commissioner Miller, but doth allow Jackson's claim for improvements stated in Alternate Statement 'D 1' of the commissioner amounting to $1,090.20, as of January 1, 1900, and the court doth sustain the fourth exception to report of Commissioner Miller in so far as the said report did not allow said Pleasanton's claim for $1,800 of personal property, as shown in Account 'E' of said report, but doth overrule the said exception as to the other items of Account 'E' thereof; the court being of the opinion that none of the other items in said Account 'E' should be allowed."

The report of Commissioner Miller thus modified by the court brings out a balance due from Jackson to Pleasanton of

$722.37 as of the date of the report March 10, 1900, and the decree accordingly authorized the latter to recover that sum of the former.

Jackson complains of this decree on the following grounds, viz: First, because it holds the deed of trust on "Pocahontas" and "Woodville" good only for the principal sum of $1,000, setting it aside as to $1,500; second, because it denies him compensation for the purchase of "Bolling Hall"; third and fourth, because he is charged with rent of Bolling Hall for the years 1895, 1896, and 1897 at $800 *per annum*; and fifth, because he is charged with the $1,800, the purchase price agreed to be paid to Ambrose Ford and paid by Pleasanton for certain personal property on "Bolling Hall" in the fall of 1894, which was taken possession of by Jackson and not delivered to Pleasanton.

Considering these assignments of error in their order, the court is of opinion that the first is wholly without merit.

It is clear that Jackson was as much the agent of Pleasanton in the purchase of "Pocahontas" and "Woodville" as he was in the purchase of "Bolling Hall"; all of the properties being bought about the same time while the relation of principal and agent was subsisting between Pleasanton and Jackson, and when Pleasanton executed the deed of trust on "Pocahontas" and "Woodville" to secure the payment of the principal note of $2,500, and the semi-annual interest notes of $75.00 each, he was led to do so by the fraudulent misrepresentations of Jackson that the note for $2,500 represented a part of the purchase price of these properties which he had advanced, when he had advanced only $1,000, leaving the balance due on the purchase price of $8,500, which Pleasanton had paid.

The court is further of opinion that the Circuit Court did not err in refusing to allow Jackson compensation for purchasing "Bolling Hall" for Pleasanton. When one assumes to act as the agent of another, common honesty and fair dealing re-

quires that he act openly and fairly with his principal, conceal-
ing nothing which the latter has a right to know, and if he does
not so act, but with a view of profit to himself and at the ex-
pense or loss of his principal, he has been unfaithful and abused
the confidence reposed in him by his principal, his transactions,
concerning the subject of the agency, should be carefully scru-
tinized, and if it be found that he has been unfaithful and has
abused the confidence reposed in him, he should be denied com-
pensation for his services.

The agreement between the parties being that Jackson would
purchase "Bolling Hall," "Pocahontas," and "Woodville" for
Pleasanton, it was incumbent upon him to deliver possession of
them to Pleasanton as soon as the latter was in position to com-
ply with the contract on his part by reimbursing the former
the money, with interest, advanced by him on the purchases.
So far as "Pocahontas" and "Woodville" are concerned, the
conveyance of them was to Pleasanton, and he was not de-
nied possession of the properties from the time he was entitled
to them, but as to "Bolling Hall," Jackson not only took a
conveyance of it to himself, but persistently refused Pleas-
anton possession of it, occupying, controlling, and managing
the property as his own until the end of a costly litigation last-
ing over three years, which resulted in his being ousted of the
possession by the sheriff of Goochland; and this refusal to
yield possession of the property has been in the face of the de-
cree of the Circuit Court of May 4, 1896, affirmed by this
court March 17, 1898—*Jackson* v. *Pleasanton, supra*—and
Pleasanton's readiness to reimburse him, with interest, for all
advances he had made in securing title to the property and to
assume the payment of the unpaid purchase money.

In *Segar* v. *Parrish*, 20 Gratt. 672, where this court, in hold-
ing that an agent who had deliberately retained trust funds
in his hands, appropriating them to his own use, and had re-
fused or failed for years to render an account of them to his

principal, forfeited all claim to compensation for services rendered in the transaction, the opinion by Staples, J., says: "Any other rule is a premium for negligence, and encouragement to persons occupying relations of trust and confidence, to retain money not their own."

Says Mecham on Agency, sec. 619: "It is held in many cases that where the agent is unfaithful to his trust and abuses the confidence reposed in him, or misconducts himself in the management of his agency, he will forfeit his right to compensation."

"There can be no greater fraud *in fact* than for an agent who is engaged to secure a particular estate for his principal to betray his trust and secure the estate for himself." Merwin's Work on Equity, sec. 240. See also Story on Agency, secs. 333-'4; and *Vennum* v. *Gregory*, 21 Iowa 326. In the case last cited it was held that where an agent was guilty of such fraud in the transaction of the business of his agency as to compel the principal to resort to litigation to protect his rights, he forfeits his right to compensation."

Recognizing the force of the reasoning underlying the rule sanctioned by the authorities, we are not without doubt as to the correctness of the decree of the Circuit Court allowing Jackson commissions on the purchase of the "Pocahontas" and "Woodville" properties, but its judgment is entitled to weight, and we shall therefore leave that ruling undisturbed, but its refusal to allow Jackson compensation for purchasing "Bolling Hall" was, we think, clearly right.

The court is further of opinion that the Circuit Court did not err in charging Jackson with rent of "Bolling Hall" for the years 1895, 1896, and 1897 at the rate of $800 *per annum.* While a more appropriate term than "rent" might have, under the circumstances, been employed, we are unable to see any good reason why Jackson should have been permitted to hold on to the possession of Pleasanton's property, using, cultivating

and managing it as his own, and not be called upon to compensate the latter for its retention and use, especially in view of the fact that Pleasanton is charged with interest on the purchase money paid for the property from the date of the wrongful conveyance of it to Jackson. Our statutes authorizing the recovery of land withheld from its owner also authorizes the recovery of damages for its retention and use; and in *Bolling* v. *Lersner*, 26 Gratt. 36, where Bolling, the vendor, withheld possession of the land from Lersner, the vendee, until he was forced to yield it at the end of a long and expensive litigation, Bolling was held accountable to Lersner for a fair rental value of the land during the time the latter was kept out of the possession of it. The appellant in that case, as in this, contended that he was bound to account for and pay only the amount of actual profits realized by him; while the appellee contended that the obligation was to pay "the annual value of the lands in the hands of a prudent and discreet tenant, upon a judicious system of husbandry," "the mode of treatment by the occupant" having "some influence in determining this value"; and this court, as did the Circuit Court of Fauquier, took the view contended for by the appellee, allowing him an annual compensation for the use and occupancy of the land during the period he was wrongfully kept out of the possession of it.

In this case Jackson should clearly be required to pay Pleasanton a fair compensation for the use and occupation of "Bolling Hall" while he kept the latter out of the possession of it, and used and cultivated it as his own; and, of the annual amount allowed by the Circuit Court, we do not think he has any just cause of complaint.

The court is further of opinion that there is no error in charging Jackson, as the lower court did, with the $1,800 paid by Pleasanton for the personal property on "Bolling Hall" purchased of Ambrose Ford, the tenant, and which Jackson refused to deliver to Pleasanton, but kept and used as his own.

There is no force whatever in the contention of Jackson that a part of the consideration for this $1,800 was the surrender by Ford of his lease of "Bolling Hall" "for another year." Jackson not only took possession of the personalty on "Bolling Hall," and retained it as his own, but remained in the possession of "Bolling Hall" with Ford as his manager, until he was ejected by the sheriff in June, 1898, three and a half years after Pleasanton was entitled to the possession of the property.

The petition for the appeal by Pleasanton assigns errors to the decree of June 19, 1901, as well as to the decree of September 11, 1901.

The first error assigned to the decree of June 19, 1901, relates to the commission allowed by the Circuit Court to Jackson on the purchase of "Pocahontas" and "Woodville," and as we have already held that it was not, under all the circumstances of the case, error to allow Jackson that commission, no more need be said upon this assignment of error.

The next error assigned is to the allowance to Jackson of $31.20 for recording the deed to himself for "Bolling Hall." This item in the commissioner's report was not excepted to, nor was it passed upon by the Circuit Court; therefore, we decline to consider it.

The third error assigned relates to the exception to the commissioner's report allowing Jackson for growing crops on "Bolling Hall" in the year 1898, and it is contended that the Circuit Court, although it struck out of the commissioner's account the allowance for growing crops, in effect allows Jackson $333.33 on account of growing crops by disallowing Pleasanton's claim for rent for the five months of 1898, during which period Jackson continued to hold possession of "Bolling Hall." This assignment of error is based, we think, upon a misapprehension, somewhat, of the effect of the ruling of the Circuit Court. No allowance was made for growing crops of 1898, as that item amounting to $811.45 was stricken out.

and having stricken it out, rent for the five months in 1898 amounting to $333.33 was disallowed. The result was that Pleasanton got the growing crops without charge for them and should not also have been allowed rent from Jackson for the five months in 1898; therefore, the Circuit Court did not err in so ruling.

The fourth assignment of error raises the question whether or not the Circuit Court should have abated interest on the purchase money due from Pleasanton for "Bolling Hall" during the period that he was kept out of the possession of the property, instead of charging Jackson with rent of the property at $800 *per annum*; in other words, the contention is that Pleasanton, in lieu of rent for "Bolling Hall," should not have been charged with interest on the purchase money except from the time he was put into possession of the property. We are of opinion that this contention is also without merit.

The fifth assignment of error is also without merit, as it in effect is a contention that Jackson should not have been credited with the taxes on "Bolling Hall" during the period that Pleasanton was kept out of the possession of it. We see no good reason for requiring Jackson to pay the taxes on the property, and at the same time charge him with the rent of it at $800 *per annum.*

The sixth assignment of error raises again the question as to whether or not the Circuit Court erred in putting the rent of "Bolling Hall" at $800 *per annum*, and we deem it unnecessary to discuss this subject further, and it is overruled.

The seventh assignment of error relates to the ruling of the Circuit Court in leaving out of its calculation as to the correct amount due from Jackson to Pleasanton certain items which the commissioner had in his account charged Jackson with. These items are in the main charges, for the use of horses and wagons by Jackson on "Bolling Hall." Jackson having been charged with the $1,800, the purchase price of

the personal property on "Bolling Hall," including these horses and wagons, clearly should not have been charged for the use of the property.

The Real Estate Title Insurance and Trust Co. of Philadelphia, filed, in these causes, its petition setting forth that it held, as trustee for Jackson, the note for $9,000 executed by Jackson to J. M. Gaines and another for the deferred instalment of purchase money on "Bolling Hall," and praying a sale of the property to satisfy the said notes. To this petition Pleasanton filed his demurrer and answer, and, upon a hearing on the petition, demurrer and answer, the Circuit Court overruled the demurrer, and decreed that unless Pleasanton, within ninety days, paid the petitioner $9,000, with interest from the 3rd day of January, 1901, certain commissioners appointed by the court for the purpose should proceed to make sale of the property upon terms named in the decree.

This ruling of the court constitutes Pleasanton's eighth and last assignment of error.

It not appearing in the petition of The Real Estate Title Insurance & Trust Co. that it held any beneficial interest in the $9,000 note, superior to Pleasanton's right to have set off against the note, the balance ascertained in this suit to be due from Jackson to him, Jackson, in fact, having paid off the note to the payees, the Circuit Court erred in decreeing a sale of "Bolling Hall," without first crediting Pleasanton as against the $9,000 with the balance ascertained to be due him from Jackson by the decree of June 19, 1901, viz: $722.37. But it appears from the record, and is, in fact, conceded by Pleasanton, that in account "C" with Commissioner Miller's report, Jackson should have had a further credit for an interest note of $270 secured on "Bolling Hall" which fell due Sept. 1, 1896, and was paid by Jackson; therefore, upon crediting this sum with interest from Sept. 1, 1896, to March 10, 1900, on the above balance of $722.37, the true balance due from Jack-

son to Pleasanton as of the last-named date is $395.22, and the decree of June 19, 1901, will in this respect be amended and affirmed.

The decree of September 11, 1901, must be reversed and annulled, and these causes remanded to the Circuit Court to be further proceeded with in accordance with this opinion.

*Reversed.*