## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Peerless Insurance Co.

v.

The Alexandria Corp.

September 16, 1983

Case No. (Chancery) 12726

BY JUDGE ALBERT H. GRENADIER

The defendant has filed exceptions to the report of the Special Commissioner in Chancery, alleging that the Commissioner erred in holding: (1) that the plaintiff's exhibits were admissible; (2) that the defendant was liable for premiums earned or billed after the agency was terminated; (3) that the agency contract was not void as against public policy; and (4) that the parties had a fiduciary or trust relationship instead of a debtor-creditor relationship and that, having violated the trust relationship, the agent forfeited his right to commissions.

The Court, having thoroughly reviewed the pleadings, the transcript of the proceedings before the Commissioner, the exhibits, and the memoranda of counsel, is of the considered opinion that exceptions (1), (2), and (3) above should be overruled and exception (4) sustained.

### Admissibility of Evidence

The defendant asserts that the exhibits introduced by the plaintiff were inadmissible under the shopbook rule. The Court is of the opinion that the Commissioner correctly admitted into evidence the testimony of the plaintiff's witnesses and the exhibits, and that it was not necessary for the plaintiff to first introduce the insurance policies and audits or to prove that the entries on the records were made under the supervision and control of the witness.

Normally, computerized business records, like other written documents, are necessarily hearsay and cannot be admitted into evidence to prove the truth of the matters asserted therein unless it can be shown that they come

within one of the recognized exceptions to the hearsay rule. Courts have held generally that computerized business records can be admitted under one of the various business records exceptions to the hearsay rule, provided that compliance with the requirements of the particular business records exception is established and provided that an adequate foundation is laid to show the accuracy and trustworthiness of the records.

Under the modern shopbook rule, it is necessary to show: (1) that the records are business records; (2) that the entries were made in the regular course of business, at or near the time of the transaction; (3) that the entries were authorized; (4) that the records are authenticated by a qualified witness; and (5) that the entrant had actual knowledge of the relevant facts and was himself acting in the ordinary course of business. See *The Law of Evidence in Virginia*, Friend (2d ed. 1983).

Printout sheets of business records stored on electronic computing equipment are admissible in evidence, if otherwise relevant and material, if the computerized entries were made in the regular course of business, at or near the time of the transaction recorded therein and a proper foundation is laid by a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, sources of information, and the time of preparation render such evidence trustworthy. *State v. Springer*, 283 N.C. 627, 197 S.E.2d 530 (1973).

In *Cotton v. John W. Eshelman & Sons, Inc.*, 137 Ga. 360, 223 S.E.2d 757 (1976), the court held that computer printouts derived from information stored on tape on electronic computing equipment were properly admitted into evidence as business records where the company's accountant and general manager testified that entries were made within a reasonable time after business transactions were completed and that the entries were furnished in the regular course of business by employees having actual knowledge of the relevant facts.

In *Sears, Roebuck & Co. v. Merla*, 142 N.J. Super. 205, 361 A.2d 68 (1976), the court held that computer printouts were admissible on the same basis as any other business records and would constitute prima facie evidence of an account stated.

In *Olympic Insurance Co. v. H. D. Harrison, Inc.*, 418 F.2d 669 (5th Cir. 1969), which was an action for an accounting and a judgment for sums allegedly due an insurance company by one of its agents, the court held that where the printouts are produced in the ordinary course of business, they have at least a prima facie aura of reliability. The printouts in ques-

tion formed the basis for the company's proof that the agent had not paid over premiums on policies he had written. The court held that the lower court did not err in relying upon the printouts as the basis for a judgment against the agent.

It is the opinion of the Court that the evidence in this case clearly supports a finding that the records were admissible under the modern shopbook rule.

### Liability for Premiums Earned or Billed after Termination of the Agency

The defendant argues that it cannot be held liable for premiums earned or billed subsequent to the termination of its agency by the plaintiff. Whether the defendant could act on behalf of Peerless after the termination of the agency under existing statutes is not, in the Court's opinion, a viable issue. The agency agreement clearly sets out the rights and obligations of the agent with respect to its liability for premiums. The termination of the agency agreement was the direct consequence of the defendant's failure to pay premiums to Peerless in accordance with the terms of the agreement. There was no evidence that Peerless did anything to prevent the defendant from performing its obligations under the agreement.

Nor did Peerless modify the agreement when it terminated the defendant's agency and advised it would bill the clients directly. Such action did not, in the opinion of the Court, have the effect of vitiating the agreement or releasing the defendant from liability for the payment of premiums under the agency agreement. In *Kelly v. American Mine Owners Casualty Corp.*, 161 Va. 206, 211 (1933), the defendant agent contended that he should have been credited with premiums which had been charged against him and which he was not permitted to collect because the company had notified the policyholders of the cancellation of the agency and directed them to make no further payments to the agent. The company had charged the premiums against the agent under the terms of his agency contract. The court held that the company's action was amply justified by the agent's failure to account for collections already made and that there was no error in refusing to credit the defendant with these premiums.

The Court must also point out that Peerless did not deal directly with the policyholders in the procurement of these policies of insurance. The agent relied upon the credit of its clients in issuing the policies and/or

renewals and had some degree of protection under the terms of the agency agreement in the event its clients did not pay.

The Court also fails to see why the defendant cannot collect premiums from its clients for policies written while its agency was in force, or even renewals thereafter, so long as it was properly authorized when the business was initiated. Furthermore, there is no language in the subject agency agreement transferring ownership of the unpaid premiums to Peerless, which takes this case out of the purview of *American Motorist Insurance Co. v. Murphy*, 253 S.C. 346, 170 S.E.2d 663 (1969).

The Commissioner correctly observes in his report that defendant presented no evidence that it did not, in fact, collect premiums which were allegedly due after termination, or to point to any specific instance where it was prevented from collecting premiums by the actions of the plaintiff.

Therefore, the Court is of the opinion that this exception is without merit and should be overruled.

### Validity of the Agreement
### Between the Parties

The defendant argues in its memorandum of May 27, 1983, that the agreement between the parties is void as against public policy. The Court should point out that the exceptions do not address this subject. Nevertheless, the Court has considered the question and concludes that the agreement between the parties is not void as against public policy. The contract provision complained of does not involve anything inconsistent with the course of justice, nor does it modify the law of evidence or oust the court of jurisdiction. The cases cited by the defendant in support of its position are not even remotely applicable to the facts in this case.

### Relationship of the Parties
### and Forfeiture of Commissions

In recommending the forfeiture of the commissions, the Commissioner relies upon the principles enunciated in *Segar v. Parrish*, 61 Va. (20 Gratt.) 672 (1871). In that case, an agent, who held trust funds for several years, refused to account to his principals for the funds and liberally applied the trust funds to his own use. The plaintiff also relies upon the holding in *Jackson v. Pleasanton*, 101 Va. 282 (1903). In that case, the agent actually retained his principal's property, refused to give up its possession, and treated it as his own until he was ousted after three years of litigation.

The Court is of the opinion that the Commissioner's reliance upon *Segar* is misplaced when the facts in this case are considered. Nor is the holding in *Jackson* controlling. In this case, there was no evidence that the defendant held any of the plaintiff's funds or refused to account for any such funds. Nor was there any evidence that a fiduciary or trust relationship existed between the parties. Under the principles enunciated in *Kelly v. American Mine Owners Casualty Corp., supra,* and *Commonwealth v. Sharp,* 155 Va. 714, 723 (1931), it is the opinion of the Court that the parties herein had a debtor-creditor relationship and not a fiduciary or trust relationship. The defendant's conduct was not sufficiently egregious or oppressive to change the nature of their relationship so as to invoke a forfeiture under *Segar* and *Jackson.*

In *Commonwealth v. Sharp, supra,* at page 723, the court said:

> If the contract of insurance is accepted by the insurer, the agent of course is liable for the premium due. But it does not necessarily follow that if the insured defaults in the payments and the agent is unable to meet his obligations to the principal by reason of such default, that he is guilty of a breach of trust or is guilty of a misappropriation of funds. In that situation, the relation of debtor and creditor does exist . . . . *Id.* at 723.

Accordingly, the Court finds that the defendant, by its failure to pay the plaintiff in accordance with the agency contract, has not forfeited its right to commissions and the defendant's exception to the Commissioner's report in this regard will be sustained.

### Conclusion

The Court will enter a decree overruling all of the exceptions save the one relating to the forfeiture of commissions and will enter a judgment in favor of the plaintiff against the defendant for the sum of $133,836.88, together with interest thereon from September 21, 1981, plus $1,900.00 representing reimbursement to the plaintiff for one-half of the Commissioner's fees and the costs of this proceeding.