42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LEGAL RESEARCH GROUP, INCORPORATED, Plaintiff-Appellee,
Alfred W. LATHAN, Defendant-Appellant.
v.
NATIONAL LEGAL RESEARCH GROUP, INCORPORATED, Plaintiff-Appellant,
Alfred W. LATHAN, Defendant-Appellee.
 Nos. 93-1844, 93-1884.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1994.
Decided Nov. 30, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CA-92-31-C)
 Raboteau Terrell Wilder, Jr., Alala, Mullen, Holland & Cooper, P.A., Gastonia, NC, for appellant.
 Timothy Jan Snider, National Legal Research Group, Inc., Charlottesville, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Alfred Lathan appeals the district court's injunction and grant of damages. The National Legal Research Group (NLRG) cross appeals the court's calculation of damages. Because the injunction has expired, we find Lathan's appeal on this issue is moot. We affirm the court's damages award.
 
 
 2
 * NLRG, a Virginia corporation, provides legal research services to practicing attorneys nationwide. NLRG used sales representatives to service client needs, respond to their complaints, and to generate new business. In 1981, NLRG hired Lathan as a sales representative under the terms of an oral employment contract. NLRG paid Lathan a 20 percent commission on all sales in his territory, which would grow to include South Carolina and parts of North Carolina and Georgia.
 
 
 3
 NLRG kept Lathan informed of the activity in his territory by providing a monthly printout of client history that listed each new project in his territory, which research associates would work on the case, the amount billed for that project, and the billing and payment history for that client. Only Lathan, the Marketing Director, two vice-presidents and the president of NLRG received copies of this printout.
 
 
 4
 In late 1988, NLRG decreased Lathan's commission rate to 11 percent. Thereafter, instead of attempting to address certain clients' complaints or to communicate the complaints to NLRG, Lathan diverted the clients to other researchers who had agreed to pay him a 30 percent referral commission. In addition, while still working for NLRG, Lathan established an 800 number and started handing out business cards to help establish his competing business. NLRG sales in Lathan's territory fell.
 
 
 5
 After Lathan resigned his sales position and NLRG became aware of Lathan's preresignation competitive activities, NLRG filed a complaint against Lathan seeking injunctive relief and damages. The district court entered a preliminary injunction to prevent Lathan from soliciting NLRG's clients or employees. The case was subsequently tried to the court.
 
 
 6
 The court entered judgment for NLRG. It found that Lathan had breached his duty of loyalty to NLRG and, through the misuse of the client history printouts, had violated the Virginia Trade Secrets Act. Va.Code Ann. Secs. 59.1-336--59.1-343 (Michie 1992). The court enjoined Lathan until March 2, 1994, from soliciting or communicating with any NLRG client that was located within Lathan's territory at the date of his resignation. It also granted NLRG $17,571 in compensatory and $10,000 in punitive damages. The court denied Lathan's cross-claim for $10,000 in withheld commissions.
 
 
 7
 Lathan appeals the court's findings on the duty of loyalty and the Trade Secrets Act claims. He also asserts that the court erred in entering the injunction and in its calculation of damages. NLRG cross appeals, claiming that the court incorrectly excluded certain amounts in its damage award.
 
 II
 
 8
 In support of its conclusion that Lathan breached his duty of loyalty to NLRG, the court found that Lathan, while still employed by NLRG, diverted 21 clients from NLRG and failed to relay client complaints to NLRG's management. We find no error in the court's factual findings. We also hold that these findings are sufficient to support the court's legal conclusion that Lathan breached his duty of loyalty to NLRG. Community Counselling Serv., Inc. v. Reilly, 317 F.2d 239, 244 (4th Cir.1963). The result is the same whether we treat Lathan as an employee or an independent contractor of NLRG. Whatever his position's label, Lathan violated his duty of loyalty as an agent. See Restatement (Second) of Agency, Secs. 385 & 387 (1958).
 
 
 9
 We affirm the court's damage award to NLRG on the ground that Lathan breached his duty of loyalty. Consequently, for purposes of the damages award, we need not consider whether the court properly ruled that Lathan also misappropriated NLRG's trade secrets in violation of the Virginia Trade Secrets Act.
 
 
 10
 The district court awarded punitive damages in view of all the circumstances of the case, including Lathan's concealment of consumer complaints, concealment of his actions to establish a competing business, and his diversion of NLRG's clients. Lathan knew that his actions would injure NLRG's business. In awarding punitive damages, the court noted its concern for "deterring others from following in Lathan's footsteps." The court emphasized that "[w]hile free competition in the marketplace is to be encouraged, it is also critically important that employees take seriously the duty of loyalty they owe their employers." We find no error in the award of punitive damages.
 
 
 11
 We affirm the district court's calculation of damages in all other respects for reasons adequately explained by the district court.
 
 III
 
 12
 Nor need we consider the court's rulings regarding the Trade Secrets Act to address Lathan's request that we vacate the injunction. The injunction expired on March 2, 1994. Lathan provided no sufficient reason for the court to consider the controversy over this terminated injunction. Accordingly, Lathan's request to vacate the injunction is now moot. See Integrated Cash Management Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 175 (2d. Cir.1990); Syntex Ophthalmics, Inc. v. Novicky, 795 F.2d 983, 985 (Fed. Cir.1986).
 
 
 13
 The existence of an injunction bond does not prevent the expired order from becoming moot in this case. In his briefs, Lathan did not seek damages on the bond. At oral argument, counsel for Lathan mentioned that he might have an action for damages under the bond, but he articulated no compensable harm that Lathan suffered as a result of the injunction. A mere possibility that Lathan might later seek damages does not justify our finding that this issue is not moot. Japan Air Lines Co. v. International Assoc. of Machinists, 538 F.2d 46, 50-51 (2d Cir.1976); see also American Can Co. v. Mansukhani, 742 F.2d 314, 320 (7th Cir.1984).
 
 IV
 
 14
 In its cross appeal, NLRG argues that the court erred in refusing to order Lathan to make restitution of the $56,289 Lathan received in commissions during the period when he breached his duty of loyalty. NLRG contends that an agent must forfeit compensation received during the period in which he was disloyal.
 
 
 15
 The better rule requires the principal to pay the agent for properly rendered services. The court may apply this rule when it can distinguish between services properly rendered and those tainted by the agent's disloyalty. The court can make this distinction if a contract apportions the agent's compensation. If an agent's pay is apportioned, for example, to "periods of time" or to "specified items of work," he will only lose his compensation for those periods or items that his disloyalty affected. See Restatement (Second) of Agency Sec. 456 & cmt.b (1958).
 
 
 16
 Lathan's situation is amenable to an apportionment solution. According to his oral contract with NLRG, Lathan's commission was apportioned to customer sales. The district court's decision allows Lathan to retain only commissions he received for customer sales that were not tainted by his disloyalty and that benefitted NLRG. By making Lathan pay NLRG the amount of diverted business, the court granted NLRG restitution for its actual loss and avoided granting a windfall to NLRG.
 
 
 17
 The apportionment rule comports with Jackson v. Pleasanton, 101 Va. 282, 43 S.E. 573 (1903). In Jackson, the court denied compensation to an agent on a transaction in which he breached his duty of loyalty. The court, however, allowed the agent to retain compensa tion he received for another transaction that occurred during the same period of his disloyalty. 101 Va. at 289-90, 43 S.E. at 576. Wilshire Oil Co. of Texas v. Riffe, 406 F.2d 1061 (10th Cir.1969), is distinguishable because the corporate officer who was held liable for breaching his duty of loyalty was not employed under a contract apportioning his compensation. See also Restatement (Second) of Agency Sec. 469 (1958).
 
 AFFIRMED