0773

Kenneth E. ELLISON, Respondent v. Robert L. POPE, individually and d/b/a Pope's Delivery Service; and Ronald W. Stacey, Jr., Appellants.

(348 S. E. (2d) 367)

Court of Appeals

*Edward R. Cole,* of *Butler, Means, Evins & Browne,* Spartanburg, *for appellants.*

*Michael Parham,* of *Abrams, Bowen & Parham,* Greenville, *for respondent.*

Heard June 25, 1986.

Decided Aug. 18, 1986.

GOOLSBY, Judge:

This case arises out of an automobile accident. The jury returned a verdict of $37,000 actual damages in favor of the respondent Kenneth E. Ellison against the appellants Robert L. Pope and Ronald W. Stacey, Jr. The questions on appeal relate to the admissibility of certain evidence challenged as hearsay, the denials of Pope and Stacey's motions for a directed verdict and judgment notwithstanding the verdict on the issue of contributory negligence, the reference to and use of certain written statements claimed to be confidential and undisclosed by Ellison in answer to Pope and Stacey's interrogatories, the argument made by Ellison's counsel to the jury regarding the credibility of certain witnesses, and the trial judge's instructions concerning the issues of recklessness and contributory recklessness. We affirm.

Ellison sued Pope and Stacey individually and in their capacities as employer and employee. Pope operated Pope's Delivery Service. He employed Stacey as a driver.

Ellison's amended complaint alleges that on January 24, 1984, he sustained personal injuries and other damages when, as Ellison traveled south on Highway 101, his car collided with a van owned by Pope and operated by Stacey. The amended complaint alleges that Pope's van was partially parked in Ellison's lane of travel. Ellison's amended complaint expressly alleges that his resulting injuries and damages were proximately caused by Pope and Stacey's negligent acts in parking a motor vehicle upon both lanes of a highway, in failing to use any lights, flares, or other devices to warn motorists of the presence of a disabled motor vehicle in the highway, and in obstructing a public highway. Pope and Stacey's amended answer denies Ellison's amended complaint in pertinent part and afirmatively alleges that Ellison's "contributory conduct," subsequently described as "negligent," barred his right to recover.

## I.

Pope and Stacey first contend the trial judge committed reversible error in allowing Ellison to testify about his acceptance of a job offer prior to the accident, the date he was to have commenced work on the job, and the salary he was to have earned.

Ellison testified that, although he was unemployed on the date of the accident, he had theretofore accepted a job offered him by Columbus Shaffer, the owner of C & S Oil Company in Greer, South Carolina, that the job was to have begun the Monday following the accident, and that he would have earned $250 a week. Shaffer died between the date of the accident and the date of trial. Pope and Stacey argue the testimony constitutes inadmissible hearsay. We do not agree.

Testimony by a witness as to a matter that is directly within his knowledge is not hearsay. 31A C. J. S. *Evidence* § 193 at 530 (1964). Ellison, as a party who had participated in the transaction leading to his employment with C & S Oil Company, plainly testified from personal knowledge and from no other source. *See Cameron v. Boone*, 62 Wash. (2d) 420, 383 P. (2d) 277, 282 (1963) ("[t]he basic [hearsay] rule precludes testimony of a witness when sourced, not upon personal knowledge, but in the verbal or written word of another"); *Rush v. Champlin Refining Co.*, 357 P. (2d) 984 (Okla. 1960) (testimony of an attorney concerning the negotiations and settlement resulting in the making of two deeds was not hearsay since the attorney participated in the negotiations and therefore had personal knowledge of the facts surrounding them).

The trial court committed no error, therefore, in admitting the testimony.

## II.

Pope and Stacey also contend that the trial court committed error in denying their motions for directed verdict and judgment notwithstanding the verdict. They maintain that Ellison was contributorily negligent and that his contributory negligence was a proximate cause of the accident as a matter of law.

In deciding whether a motion for directed verdict or for

judgment notwithstanding the verdict should be granted, the evidence and all reasonable inferences that can be drawn therefrom must be considered in the light most favorable to the party opposing the motion and most strongly against the party making the motion. *Olin Mathieson Chemical Corp. v. Planters Corp.*, 236 S. C. 318, 114 S. E. (2d) 321 (1960). If more than one reasonable inference can be drawn from the evidence, the motion should be refused. *Hunter v. Dixie Home Stores*, 232 S. C. 139, 101 S. E. (2d) 262 (1957). Ordinarily, the questions of contributory negligence and proximate cause are for the jury. *Davenport v. Walker*, 280 S. C. 588, 313 S. E. (2d) 354 (Ct. App. 1984).

When the evidence here and all its reasonable inferences are viewed in the light most favorable to Ellison, jury issues concerning the questions of contributory negligence and proximate cause clearly appear.

The evidence and its reasonable inferences, viewed in the light most favorable to Ellison, show that sometime after 7:30 p.m. on January 24, 1984, Ellison was traveling south on Highway 101. He had his headlights on and had a clear view of the road ahead, although it was misting rain and was foggy in places.

As Ellison came up a hill on a two-lane portion of Highway 101 and started into a curve, he collided with a disabled van owned by Pope and operated by Stacey. The van was sitting "well over halfway" in Ellison's lane of travel. His vehicle struck the van almost at the same instant he spotted it.

Ellison claimed he never exceeded the posted speed limit. He also stated he maintained a lookout ahead as he traveled down Highway 101.

Prior to the accident, Stacey had skidded and gone off the left-hand side of the highway into a ditch. He called Pope for assistance after he was unable to get the van back onto the highway.

Pope arrived in another van, attached a chain to the disabled van, and attempted to pull the disabled van from the ditch. After Pope got the disabled van onto the highway, the chain holding the two vehicles together came loose. The disabled van was left partially in the southbound lane as Stacey attempted to start its motor. The collision occurred

after Pope went a short distance away to turn around.

Although the disabled van carried reflective triangles, these warning devices were not placed on the highway to warn motorists of the disabled van's presence ahead.

Pope and Stacey offered evidence that Ellison was traveling at a high rate of speed shortly before the accident and as he came around the curve.

The questions of whether Ellison was speeding at the time he hit the disabled van and, if so, whether Ellison's excessive speed was a proximate cause of the accident and his resulting injuries were obviously for the jury, especially since the evidence regarding Ellison's speed was in conflict. *Dudley Trucking Co. v. Hollingsworth*, 243 S. C. 439, 134 S. E. (2d) 399 (1964); 61 C. J. S. *Motor Vehicles* § 527(9) at 1085 (1970); *see Heath v. Orlandi*, 127 Vt. 204, 243 A. (2d) 792 (1968) (whether the plaintiff who collided with a truck in his lane of travel exercised reasonable care in entering a curve at a certain speed held to be a question for the jury); *Everhardt v. Garner*, 100 S. W. (2d) 71 (Mo. App. 1936) (where automobiles collided on a curve and the evidence of the positions of the automobiles on the highway and of the speed at which they were traveling was in conflict the question of contributory negligence was for the jury); *see also Toole v. Salter*, 249 S. C. 354, 154 S. E. (2d) 434 (1967) (the question of contributory negligence of the plaintiff who allegedly did not maintain a proper lookout when on a dark night she struck the defendant's unlighted and unattended parked automobile that protruded into the traveled portion of the highway held to be a jury issue). The trial court therefore properly denied Pope and Stacey's motions for directed verdict and judgment notwithstanding the verdict.

### III.

Pope and Stacey next contend the trial judge committed reversible error in allowing Ellison's counsel to refer to and to use for purposes of impeachment the handwritten statements voluntarily given by them to the investigating officer immediately after the accident. They argue that under South Carolina Code of Laws §§ 56-5-1290 and 56-5-1340, as amended, (1976), the statements are confidential and their use at trial was prohibited. Pope and Stacey further argue

that Ellison's failure to disclose the existence of these statements in his answer to their interrogatories also precluded the use of the statements.

South Carolina State Highway Patrolman Billy Wayne Leaphart investigated the collision between Ellison's automobile and Pope's van. As part of his investigation, Leaphart asked both Pope and Stacey to provide him with a written statement describing how the collision occurred. Both men before leaving the accident scene voluntarily gave Leaphart a handwritten account of the accident. Leaphart subsequently filed both statements with the South Carolina Department of Highways and Public Transportation.

Ellison's counsel apparently obtained copies of these statements from the Department when he wrote asking for a copy of the collision report. He proffered both statements at trial.

Although the trial judge sustained Pope and Stacey's objection to the introduction of the statements, he allowed Leaphart to be questioned about the circumstances under which the statements were taken.

The trial judge also stated Leaphart could be asked about any declaration against interest contained in either statement and he ruled that Ellison's counsel could use the statements for impeachment purposes. Ellison's counsel later used each statement for impeachment purposes during cross-examination.

We find no merit to Pope and Stacey's contention that Sections 56-5-1290 and 56-5-1340, as amended, rendered their statements confidential and that these statutes barred any reference to their statements and prevented their use at trial for purposes of impeachment.

Section 56-5-1290 prohibits the reports required by Sections 56-5-1260 through 56-5-1280 from either being referred to or being evidence of a party's negligence at the trial of an action to recover damages.

Section 56-5-1260 requires a driver involved in an accident resulting in injury or death of a person to immediately notify the appropriate law enforcement agency of the accident.

Section 56-5-1270, as amended, requires either the owner or the operator of a motor vehicle involved in an accident

resulting in injury or death of a person or in property damage to an apparent extent of $200 that was not investigated by a law enforcement officer to forward to the Department within 15 days of the accident a written report and verification of liability insurance coverage of the accident. This section further requires a law enforcement officer who investigates a motor vehicle accident to forward to the Department a written report thereof within 24 hours after completing his investigation.

Section 56-5-1280 requires an occupant of a vehicle involved in an accident to make the reports required by Sections 56-5-1260 and 56-5-1270 when the driver is physically incapable of making these reports and the occupant is able to do so.

Section 56-5-1340, as amended, renders confidential "all accident reports made by persons involved in accidents" and prohibits their use "as evidence in any trial, civil or criminal, arising out of an accident."

We construe the term "accident reports," as used in Section 56-5-1340, as amended, to mean only the reports of an accident that the law requires a person to make and not the reports of an accident that a person otherwise makes. See *Brackin v. Boles*, 452 So. (2d) 540, 544 (Fla. 1984) (wherein the court held that the purpose of the Florida statute prohibiting the use of communications "made by persons involved in accidents" is to "clothe with statutory immunity only such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under" the Florida statute, a statute containing provisions almost identical to Sections 56-5-1270 before its amendment in 1977 by Act No. 195 and to Section 56-5-1340 both before and after its amendment by the same act). A broader definition of the term would render confidential any account of an accident made by a person involved in an accident, irrespective of the person to whom it was given and regardless of the circumstances.

In our view, neither Section 56-5-1290 nor Section 56-5-1340, as amended, was ever intended to prohibit the reference to or use as evidence at trial of an oral or handwritten statement which is voluntarily given to an investi-

gating officer at an accident scene by an operator or owner of a vehicle involved in the accident and in which the operator or owner details how the accident occurred. These statutes make confidential only statutorily required accident reports and nothing else. *Davies v. Superior Court (State)*, 36 Cal. (3d) 291, 204 Cal. Rptr. 154, 682 P. (2d) 349, 353 (1984) (wherein the court, in construing a statute similar to Section 56-5-1340, as amended, but using the phrase "[a]ll required accident reports" rather than the words "all accident reports," held that the exclusion of accident reports from evidence "is quite narrow ... applying only to statutorily 'required' accident reports, those to be made by a driver, passenger, or witness to an accident and to statements contained in those reports").

At present, no statute compels an operator or owner of a vehicle to make an accident report to an investigating officer and to include in the report an explanation of how the accident happened, even if it involves making a statement against interest. In South Carolina, an operator or owner of a vehiche involved in an accident is not required to report to the police anything more than the fact of the accident itself and then only if the accident resulted in personal injury or death. Code of Laws of South Carolina § 56-5-1260 (1976); *see Creary v. State*, 663 P. (2d) 226, 46 A. L. R. 4th 283 (Alaska App. 1983) (Alaska statute almost identical to Section 56-5-1260 interpreted to require a person involved in an accident merely to give notice of the fact of the accident to the appropriate police department).

We therefore hold that where, as here, an operator or owner of a motor vehicle involved in an accident investigated by a law enforcement officer voluntarily gives a handwritten statement to the officer at the scene of the accident and the officer later sends the statement to the Department, neither Section 56-5-1290 nor Section 56-5-1340, as amended, renders the operator's or owner's statement either confidential of unusable at a subsequent trial. Only the "written report" prepared by the officer and forwarded to the Department pursuant to 56-5-1270, as amended, is confidential. *See Creary v. State, supra* (statute prohibiting a report made by a police officer who investigates a vehicle accident from being used as evidence in civil

or criminal trial arising out of the accident refers to the "written report" itself and not to any statements made to the officer in the course of the investigation, including a statement obtained from a driver involved in the accident); *Spradling v. State*, 628 S. W. (2d) 123, 125 (Tex. App. 1981) (statute almost identical to Section 56-5-1340, as amended, held to make privileged only "the written reports required to be made in compliance with the statute"); *see also* Annot., 46 A. L. R. 4th 291 at 297 (1986) (summary of cases wherein courts have held a police officer's testimony relating to admissions made in or for an automobile accident report required by law was admissible).

We likewise find no merit to Pope and Stacey's contention that the trial court erroneously allowed reference to and use of their statements because Ellison's answers to interrogatories failed to notify them of the existence of their own written statements.

In *Bankers Trust of South Carolina v. Bruce*, 283 S. C. 408, 323 S. E. (2d) 523 (Ct. App. 1984), this court held that, among other things, letters written by a defendant himself were not improperly allowed in evidence by the trial court even though the letters were not listed in the plaintiff's answers to interrogatories. One basis of our decision was that a party more than anyone else should be aware of his own letters. The same reasoning applies here, obviously. A party should be aware of his own voluntarily given handwritten statements, especially those given to a law enforcement officer.

### IV.

Pope and Stacey also contend that the trial court erred in allowing Ellison's counsel in his closing jury argument to express his personal opinions as to Pope and Stacey's credibility and as to the credibility of the investigating officer, Patrolman Leaphart.

Ellison's attorney, Michael Parham, Esquire, of the Greenville County Bar, told the jury in the course of his argument that he would believe Leaphart over Stacey, that he did not believe the testimony of Pope and Stacey concerning the point of impact, that Pope's testimony regarding his whereabouts at the moment Ellison struck the van was incredible and that he did not believe this testimony, and

that Stacey's testimony that Ellison came around the curve on the wrong side of the road was also incredible and that he did not believe this testimony either.

A lawyer's personal opinion regarding the credibility ■ of a witness is not a proper subject for argument to a jury. S. C. SUP. CT. R. 32, Code of Professional Responsibility, DR 7-106(C)(4); *Seguin v. Hauser Motor Co.*, 350 So. (2d) 1089 (Fla. App. 1977); *see* 75 Am. Jur. (2d) *Trial* § 306 at 380 (1974). The expressions by Ellison's counsel of his personal opinions as to the credibility of Leaphart and of the two defendants, therefore, were clearly improper.

While we agree that it is improper for a lawyer appearing in his professional capacity before a tribunal to assert his personal opinion as to the credibility of a witness, reversible error is not necessarily committed when a lawyer makes a comment of this kind. *Joseph v. Monroe*, 419 A. (2d) 927 (Del. 1980); *see* Annot., 81 A. L. R. (2d) 1240 at 1269-70 (1962). The main question in such an instance is whether the improper comment caused sufficient prejudice to the complaining party to warrant reversal. *Joseph v. Monroe, supra; see McCormick v. Malecha*, 266 Minn. 33, 122 N.W. (2d) 446 (1963); *cf. Cummings v. Tweed*, 195 S. C. 173, 10 S. E. (2d) 322 (1940) (statement by plaintiff's counsel during his jury argument that he did not believe the defendant cared if the plaintiff got a verdict or not held to be improper but not clearly prejudicial).

In light of the record and the evidence clearly sup- ■ porting the verdict, we do not think that the comments complained of here were such as to require a new trial.

## V.

The last asserted error charged by Pope and Stacey involves the trial court's charge to the jury concerning the issue of "recklessness" and "contributory recklessness." Pope and Stacey contend that the pleadings did not raise recklessness and contributory recklessness as issues.

In its charge to the jury, the trial court defined the term "recklessness," distinguished "recklessness" from "negligence," and explained that a violation of a statute constitutes some evidence of recklessness. The trial court also

instructed the jury concerning contributory recklessness.

The amended complaint nowhere expressly alleges that Pope and Stacey engaged in reckless conduct. It expressly alleges only negligence. The amended answer does not expressly allege contributory recklessness.

While a court should limit its instructions to the issues raised by the pleadings and supported by the evidence [*Tucker v. Reynolds*, 268 S. C. 330, 233 S. E. (2d) 402 (1977); *Baker v. Weaver*, 279 S. C. 479, 309 S. E. (2d) 770 (Ct. App. 1983)], the court is not restricted to only those issues that the pleadings expressly bring into focus. The pleadings may implicitly suggest an issue. Where they do so and the issue is supported by the evidence, the trial court is obligated to instruct the jury concerning it. *Mouzon v. Moore & Stewart, Inc.*, 282 S. C. 233, 317 S. E. (2d) 756 (Ct. App. 1984); *Carroll v. Smith-Henry, Inc.*, 281 S. C. 104, 313 S. E. (2d) 649 (Ct. App. 1984).

■ Here, the pleadings implicitly suggest that reckless conduct was in issue.

Many cases in South Carolina hold that the violation of a statute can be considered by a jury as some evidence of recklessness. *E.g., Johnson v. Parker*, 279 S. C. 132, 303 S. E. (2d) 95 (1983); *Daniels v. Bernard*, 270 S. C. 51, 240 S. E. (2d) 518 (1978).

The amended complaint alleges that Pope and Stacey engaged in conduct that violated several South Carolina statutes. Statutes that the amended complaint suggests were violated include Section 56-5-2510, as amended (prohibits the stopping, parking, or leaving of a vehicle upon the paved part of a highway when it is practicable to stop, park, or leave the vehicle off the highway), Section 56-5-4450 (requires every vehicle upon a highway during nighttime hours to display lighted lamps and illuminating devices), Section 56-5-4640 (requires a vehicle lawfully parked on a highway during nighttime hours when light is insufficient to reveal vehicle's presence to be equipped with lamps), and Section 56-5-5090 (requires the driver of a truck disabled on the traveled portion of a highway during nighttime hours to place on the roadway and to display certain warning devices in advance of, to the rear of, and to the side of the disabled vehicle). Indeed, the trial court charged each of these stat-

utes without objection from Pope and Stacey.

The amended answer, in expressly alleging contributory negligence, suggests that Ellison violated some statutes as well. They include Section 56-5-1520(a) (prohibits a driver of a vehicle from traveling at a speed greater than is reasonable and prudent under the existing conditions), Section 56-5-1520(b)(5) (prohibits a driver of a vehicle from traveling at a speed greater than 55 miles per hour), and Section 56-5-1520(c) (requires a driver of a vehicle to reduce speed when going around a curve).

Since the pleadings imply that the parties violated several state statutes and there is evidence in the record to support these allegations, the court committed no error in instructing the jury concerning recklessness and contributory recklessness. *Cf. Dudley Trucking Co. v. Hollingsworth, supra* (violation of Sections 56-5-2510, 56-5-4640 and 56-5-5090 under some circumstances would be some evidence of reckless conduct); *Row v. Frick*, 250 S. C. 499, 159 S. E. (2d) 47 (1968) (violations of Section 56-5-1520(a) and (c) are evidence of recklessness).

For the foregoing reasons, the judgment appealed from is

Affirmed.

GARDNER and MENDENHALL, JJ., concur.