1208

COLLINS & SONS FINE JEWELRY, INC., Respondent v. CAROLINA
SAFETY SYSTEMS, INC., and Southeastern Security Systems, Inc., of
whom SOUTHEASTERN SECURITY SYSTEMS, INC., is Appellant.

(371 S. E. (2d) 539)

Court of Appeals

*Robert E. Salane,* of *Barnes, Alford, Stork & Johnson,* Columbia, *for appellant.*

*Richard J. Breibart* and *John J. McCauley,* Lexington, *for respondent.*

Heard June 20, 1988.

Decided Aug. 8, 1988.

GOOLSBY, Judge:

This action brought by Collins & Sons Fine Jewelry, Inc., against Carolina Safety Systems, Inc., and Southeastern Security Systems, Inc., arises out of the failure of a burglar alarm system to function during a break-in at a jewelry store. The issues on appeal relate to the trial court's failure to grant Southeastern's motions for directed verdict and judgment notwithstanding the verdict on the issues of negligence, proximate cause, contributory negligence, and assumption of risk, to the trial court's refusal to declare a mistrial, to the trial court's admission and exclusion of certain evidence, to the trial court's giving of an instruction concerning contributory negligence, and to the trial court's refusal to charge certain requests to charge.

Collins & Sons operated a retail jewelry store in a shop-

ping center at the intersection of St. Andrews Road and Short Bush River Road in Irmo. On October 12, 1985, during the early morning hours, thieves broke into the store and stole jewelry and other merchandise. Although the store was equipped with a burglar alarm system installed by Carolina Safety in 1977 and modified by Southeastern in 1982, it failed to operate when the break-in occurred.

Several months after the break-in and theft, Collins & Sons commenced the instant action by the service of a summons and complaint on Carolina Safety and Southeastern. Collins & Sons alleged, among other things, that its damages were proximately caused by the negligence of Carolina Safety and Southeastern in installing and modifying the alarm system.

In its answer, Southeastern denied the material allegations of the complaint and set forth other defenses. These defenses included intervening acts of others, contributory negligence and recklessness, and assumption of risk.

The trial began on November 10, 1986, with the parties stipulating that Collins & Sons' damages were $185,000.

When Collins & Sons announced during the trial it had agreed to accept $40,000 in settlement from Carolina Safety, the trial court dismissed Carolina Safety from the suit. The settlement announcement prompted Southeastern to move for a mistrial; however, the trial court denied the motion and the trial proceeded with Southeastern as the sole defendant.

Before submission of the case to the jury, the trial court reduced to three the specifications of negligence alleged by Collins & Sons to have proximately caused its break-in losses. These specifications were: (1) Southeastern's alleged disconnection of a previously installed "line-cut" detector; (2) Southeastern's alleged leaving in the control box of a live bare wire that caused a short circuit in the alarm system; and (3) Southeastern's alleged failure to deliver a replacement transformer prior to the break-in.

The jury returned a verdict against Southeastern. The trial court thereafter entered judgment against Southeastern for $145,000 and denied Southeastern's post-trial motions for judgment notwithstanding the verdict and for new trial.

Southeastern appeals. We affirm.

## I.

Southeastern first contends the trial court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict.

In addressing the issues embraced by this contention, we view the evidence and all its reasonable inferences, as we must, since this is a law case, in the light most favorable to Collins & Sons, the party resisting the motions, and most strongly against Southeastern, the party making them. *Ellison v. Pope,* 290 S. C. 100, 348 S. E. (2d) 367 (Ct. App. 1986). Because we are not a jury, we do not weigh the evidence and we do not decide matters of credibility. *South Carolina National Bank v. Silks,* 295 S. C. 107, 367 S. E. (2d) 421 (Ct. App. 1988). We also eliminate from our consideration all evidence contrary to or in conflict with the evidence favorable to Collins & Sons and give to Collins & Sons the benefit of every favorable inference that the facts reasonably suggest. *May v. Hopkinson,* 289 S. C. 549, 347 S. E. (2d) 508 (Ct. App. 1986).

As originally installed, the alarm system included motion detectors, entry detectors, a tape dialer, an inside siren, an outside siren, and an inside strobe light. If either a motion detector or an entry detector sensed an intruder, the sirens sounded a local alarm, the strobe light flashed, and the tape dialer automatically telephoned a pre-recorded message to the police.

Because the tape dialer would not operate if its telephone line was cut, Collins & Sons had Carolina Safety add a "line-cut" detector to the system in 1979. In the event someone cut the telephone line used by the tape dialer, the "line-cut" detector signaled the police that someone was tampering with the telephone lines and after a 30 second delay triggered the sirens and the strobe light.

In 1982, Collins & Sons had Southeastern add an electronic digital communicator to the alarm system. The device performed the same function as the tape dialer, but it did so more reliably and operated more quickly.

Southeastern connected the electronic digital communicator to a monitoring board at 3M Company. At Collins' request, Southeastern later connected the electronic digital communicator to a monitoring board at the Lexington County Sheriff's Department.

While connected to 3M Company's monitoring board, Collins & Sons' alarm system received automatic weekly testing. Automatic testing, however, was not available for alarm systems tied to the monitoring board at the sheriff's department.

In Lexington County, if a business' alarm system were directly tied into the sheriff's department and a break-in occurred at the business' location, a dispatcher would be notified within five minutes of the break-in and the dispatcher would immediately send an officer to the scene of the break-in. The officer would arrive at the scene within ten minutes of being told by the dispatcher to go there.

The alarm system, as installed by Carolina Safety and as modified by Southeastern, was powered by a battery pack fed by a transformer that was plugged into a 110-volt wall outlet. The battery pack could operate the alarm system for 24 hours should the transformer fail.

Also connected to the alarm system's power supply was a door enunciator. The door enunciator, which Southeastern also installed for Collins & Sons, alerted jewelry store employees of anyone entering through the store's front door.

On Monday, October 7, 1985, William Sammy Collins, Collins & Sons' principal owner, noticed the door enunciator did not work. A customer traced the problem to a burned-out transformer.

After trying unsuccessfully to find a replacement transformer, Collins telephoned Southeastern on Tuesday morning and asked it to send him a transformer. Southeastern promised to deliver a transformer to Collins; however, it did not do so until after a break-in occurred on Sunday, October 12, 1985.

The break-in occurred during the early morning hours. Professional thieves gained access to the store by moving an air conditioning unit on the roof, disconnecting the duct work, and lowering a ladder down into the store. The thieves also cut the telephone lines and severed the wires to the motion detectors, sirens, and strobe light. Once inside the store, they ransacked it, emptying boxes and display cases and breaking open a safe in the process. From all appearances, the thieves were in the store for more than 15 minutes.

At the time of the break-in, the alarm system, including the electronic digital communicator, could not have functioned. The transformer that powered the system had been inoperative for several days and the battery pack had no power and was damaged.

Collins had assumed the alarm system was operating because he had heard "clicks" from the motion detectors, which were on a separate power source than the siren and electronic digital communicator, and because he did not know the burned-out transformer supplied power to anything other than the door enunciator. He had also tested the alarm system the week before.

An investigation conducted after the break-in revealed the "line-cut" detector had been removed. A live bare wire in the alarm system's control box was also discovered.

### A.

Southeastern maintains the evidence and its reasonable inferences do not support findings of negligence and of proximate cause.

### 1.

We consider first the question of negligence.

Tommy Hooker of Carolina Safety testified Carolina Safety connected a "line-cut" detector and a tape dialer to Collins & Sons' alarm system. A service order also reflects Carolina Safety's installation of the "line-cut" detector. According to Hooker, Carolina Safety tied both the "line-cut" detector and the tape dialer directly into the telephone lines. The two devices, he said, also shared the same power line.

Billy Francis O'Neal, Southeastern's general manager for installation and service, agreed on cross-examination that a disconnection of the tape dialer from either the telephone lines or the power supply would result in the "line-cut" detector also being disconnected from the system.

Southeastern did not dispute it had disconnected the tape dialer.

Scott Fennimore, an expert in the service, design, and installation of alarm systems, testified he examined Collins & Sons' alarm system after the break-in and repaired it and the battery pack. Fennimore also testified he found a live

bare wire in the alarm system's control box, a box he understood Southeastern had installed. Fennimore said the wire could have damaged the battery pack and disabled the entire alarm system.

Collins testified both Southeastern and Carolina Safety for a six to twelve month period after Southeastern installed the electronic digital communicator made service calls to remedy problems associated with the alarm system and caused by the dual operation of the tape dialer and the electronic digital communicator. Collins said he allowed Southeastern to disconnect the tape dialer. Thereafter, only Southeastern serviced the system. It last visited the store on January 12, 1985.

Collins & Sons' expert in electricity, Rufus Fellers, testified a short circuit on the battery pack's terminals would have destroyed the transformer. Fellers also testified there was no reason to leave a bare wire in the control box.

We think the jury could reasonably have found from this evidence that Southeastern removed the "line-cut" detector from Collins & Sons' alarm system when Southeastern disconnected the tape dialer and that Southeastern left the live bare wire in place in the alarm system's control box, the live bare wire caused a short circuit, and the short circuit damaged the alarm system's power sources and caused the alarm system to fail.

### 2.

We turn now to the question of proximate cause.

Regarding the question of proximate cause, this court recently observed in *Ballou v. Sigma Nu General Fraternity*, 291 S. C. 140, 147, 352 S. E. (2d) 488, 493 (Ct. App. 1986):

> The question of proximate cause is ordinarily a question of fact for determination by the jury. *Player v. Thompson*, 259 S. C. 600, 193 S. E. (2d) 531 (1972). Only in rare or exceptional cases may the question of proximate cause be decided as a matter of law. 65A C. J. S. *Negligence* § 264 at 917 (1966). The particular facts and circumstances of each case determine whether the question of proximate cause is for the court or for the jury. *Id.* at 917-18. If there may be a fair difference of opinion regarding whose act proximately caused the injury,

then the question of proximate cause must be submitted to the jury. *Johnson v. Finney*, 246 S. C. 366, 143 S. E. (2d) 722 (1965).

In a case where a plaintiff seeks to hold a burglar alarm company liable for burglary losses, the plaintiff must prove the thief or thieves would not have succeeded in stealing the plaintiff's property had the alarm system not failed. *Accordini v. Security Central, Inc.*, 283 S. C. 16, 320 S. E. (2d) 713 (Ct. App. 1984).

Southeastern would have us view this case simply as one involving the failure of an alarm system to activate local alarms, in this case, two sirens and a strobe light. *See Vastola v. Connecticut Protective System*, 133 Conn. 18, 47 A. (2d) 844 (1946) (a case concerned with the failure of a local burglar alarm system when thieves broke into a restaurant). The problem with this view is that it ignores the function of a "line-cut" detector. As we pointed out above and as Collins himself testified, both on direct-examination and cross-examination, a "line-cut" detector not only would have set off local alarms when someone tampered with the telephone lines it also would have sent a signal to the sheriff's department.

The instant case, then, should more properly be viewed as one that also involves the failure of an alarm system to transmit a trouble signal to a monitoring center.

So viewed, the jury was entitled to find that Southeastern's leaving of the live bare wire, which could have caused the alarm system to lose its power supply, and Southeastern's removal of the "line-cut" detector, which would have signaled the sheriff's office when the thieves cut the telephone lines, proximately caused Collins & Sons' loss.

Sufficient evidence, both direct and circumstantial, suggests the "line-cut" detector, had it been in place and able to function, would have sent a trouble signal to the monitoring board at the sheriff's office, a dispatcher would have been notified of the signal, the dispatcher would have immediately sent a law enforcement officer to Collins & Sons' jewelry store, and the officer would have reached the store in no more than 15 minutes after the signal was sent and

while the thieves were still in the store and would have prevented the theft. *See McCane-Sondock Protection Systems, Inc. v. Emmittee*, 540 S. W. (2d) 764 (Tex. Ct. Civ. App. 1976) (evidence that the police would have been notified within 30 to 45 seconds if alarm buttons had functioned when the store manager pressed them after a robber came into the plaintiff's store declaring his intent to rob the store and evidence that the robber remained in the store five to ten minutes after the buttons were pressed held sufficient to establish the plaintiff's loss was the proximate result of the defendant alarm company's failure to properly install alarm equipment).

### 3.

We need not determine the questions of whether Southeastern negligently failed to deliver a replacement transformer and of whether such failure was a proximate cause of the loss sustained by Collins & Sons since other theories support the general verdict. *Mims v. The Florence County Ambulance Service Commission*, _____ S. C. _____, 370 S. E. (2d) 96 (Ct. App. 1988) (the Court of Appeals need not address a question concerning the sufficiency of the evidence to support one theory where the verdict is a general verdict and can rest on another theory advanced at trial).

### B.

Southeastern further maintains the evidence and its reasonable inferences support only the conclusion that the sole proximate cause of Collins & Sons' loss was the intervening, criminal act of professional thieves. In other words, Southeastern argues the independent, criminal acts of the thieves superseded any negligence on its part and became the proximate cause of Collins & Sons' damages as a matter of law.

This contention has no merit. Indeed, the contention was foreclosed by our decision in *Accordini*, a burglar alarm case. For an intervening force to be a superseding cause that relieves an actor from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated. *Mickle v. Blackmon*, 252 S. C. 202, 166 S. E. (2d) 173, 42 A. L. R. (3d) 525 (1969), *app. after remand*, 255 S. C. 136, 177 S. E. (2d) 548 (1970); *Central Alarm of Tucson v. Ganem*, 116 Ariz. 74, 567 P. (2d) 1203 (Ct.

App. 1977). In *Accordini*, this court recognized that a theft by burglary is a reasonably foreseeable consequence of a malfunctioning alarm system.

The issue of proximate cause, therefore, was properly submitted to the jury. *See McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S. W. (2d) 62 (Tex. Ct. Civ. App. 1975) (wherein the court rejected the defendant's argument that as a matter of law the proximate cause of the loss suffered by the plaintiff when a burglar alarm system failed to function was the criminal action of a third party).

## C.

Southeastern also contends the evidence and its reasonable inferences support only the conclusion that the sole proximate cause of Collins & Sons' loss was its own contributory negligence in failing to maintain, test, or repair its alarm system.

Ordinarily, the question of contributory negligence is a question of fact for the jury to determine and is rarely one of law for the court to decide. *Broom v. Southeastern Highway Contracting Company, Inc.*, 291 S. C. 93, 352 S. E. (2d) 302 (Ct. App. 1986). In determining the question of whether a plaintiff was guilty of contributory negligence as a matter of law, all the evidence must be viewed in the light most favorable to the plaintiff. *Id.*

Southeastern's contention centers on Collins' asserted failure to test the alarm system "at least weekly," especially after learning on October 7, 1985, the transformer was not operating, on his failure to make a greater effort to obtain more quickly a replacement transformer, and on Collins & Sons' dropping of automatic testing when it switched to the Lexington County Sheriff's Department for monitoring services.

This contention, however, ignores the following evidence: Collins usually tested the alarm system "once a week;" it had been checked the week before the break-in and the check had found "everything was working;" Southeastern, according to Collins, provided no training "whatsoever" regarding the operation and maintenance of the alarm system; Collins did not understand the down

transformer powered the alarm system; Collins believed, albeit wrongly, the alarm system was functioning because of the clicking sounds made by the motion detectors; Collins expected Southeastern to deliver a replacement transformer as it promised to do; Southeastern knew the transformer supplied power to the alarm system; and Southeastern on its own initiative advised Collins & Sons of the availability of monitoring services at the Lexington County Sheriff's Department.

Clearly, the evidence presented a jury issue regarding whether Collins & Sons negligently contributed to its own loss.

## D.

Southeastern further contends the evidence and its reasonable inferences support only the conclusion that Collins & Sons assumed the risk of a burglary loss by allowing its alarm system to remain inoperative.

A plaintiff may be held to have assumed the risk as a matter of law where it clearly appears "the plaintiff freely and voluntarily exposed himself to a known danger and understood and appreciated the danger." *Broom v. Southeastern Highway Contracting Company, Inc.*, 291 S. C. at 101, 352 S. E. (2d) at 307. The evidence here comes nowhere close to satisfying this standard.

Among other things, as we noted above, the alarm system had been tested the week before the break-in and had been found operational and Collins thought from the clicking sounds made by the motion detectors that the alarm system was operating, despite the defective transformer. Also, Collins believed the defective transformer, which Southeastern originally promised to deliver the day after Collins ordered a replacement, operated only the door enunciator.

## II.

Southeastern appeals the denial of its motion for mistrial. Southeastern made the motion after the trial court removed Carolina Safety from the litigation during the trial of the case. Southeastern claims Carolina Safety's unexplained removal from the litigation prejudiced it before the jury.

In denying Southeastern's motion, the trial court expressly found Southeastern suffered no prejudice by Caro-

lina Safety's removal from the case. Later, in its general charge to the jury, the trial court told the jury it was not to be concerned with Carolina Safety's withdrawal from the case.

The question of whether to grant a motion for mistrial is a matter left largely to the discretion of the trial court and where the motion is denied the burden is upon the movant to show resulting prejudice. *Keller v. Pearce-Young-Angel Co.*, 253 S. C. 395, 171 S. E. (2d) 352 (1969). So far as the record shows, the unexplained removal of Carolina Safety from the case cut both ways, neither helping nor hurting either of the remaining parties to the action.

## III.

### A.

We turn now to Southeastern's argument concerning the admission of testimony over its objection about the absence of an "AC power-on light." An AC power-on light would indicate when an alarm system supplied by AC or DC power is using AC power.

Southeastern's exception states the evidence was "irrelevant to any issue involving [it] and pertain[ed] solely to the acts or omissions of [Carolina Safety] which had been previously removed from the lawsuit."

Southeastern misreads the complaint. The complaint expressly alleges both defendants, and not just Carolina Safety as Southeastern suggests, were negligent "[i]n failing to install a light or warning device indicating when the power source shifted from electrical power to the 'back-up' battery system." Thus, the evidence was clearly relevant and admissible when it was offered.

The trial court struck the allegation concerning the AC power-on light at the close of all the evidence and before counsel made their closing arguments to the jury; however, Southeastern did not thereafter make a motion to strike the evidence. Southeastern may not now complain. *See West End Cab Company, Inc. v. Collier*, 109 Ga. App. 555, 136 S. E. (2d) 512 (1964) (where evidence admissible at the time it is offered is admitted over objection but is subsequently shown to be inadmissible, the method of ob-

taining exclusion of the evidence is by a motion to strike when its inadmissibility appears); 88 C. J. S. *Trial* § 133 at 267 (1955) (a motion to strike is necessary where evidence admitted is relevant only to counts of the complaint that have been withdrawn).

We note also that Southeastern did not request the trial court to require the jury to return a special verdict upon particular issues. *See* S.C.R. CIV. P. 49(a) (rule of procedure that authorizes special verdicts).

B.

Southeastern challenges the trial court's exclusion of a contract between Southeastern and Collins & Sons. The trial court excluded the contract on the grounds of relevancy and unconscionability.

The contract concerned the installation and maintenance of an "emergency monitoring [and] notification [system] via [a] digital communicator at U1 Central Station" and prescribed a monthly fee for "burglary notification" and for "automatic weekly test[ing]." Paragraph 7 thereof set forth a liquidated damages clause.

The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court whose discretion will not be disturbed on appeal unless an abuse of discretion amounting to a manifest error of law and prejudice to the appellant's rights are shown. *Honea v. Prior*, 295 S. C. 462, 369 S. E. (2d) 846 (Ct. App. 1988).

The trial court committed no manifest error of law here. Harry Crosby, Southeastern's managing director and owner, conceded the contract, dated April 28, 1982, was not in effect at the time Collins & Sons suffered its burglary loss.

As to Southeastern's contention that the contract was relevant to the issue of Collins & Sons' "knowledge of the risks and dangers of a nonfunctioning alarm [system]" and to the issue of its "assumption of those risks by eliminating the testing service contained in the contract," the trial court's exclusion of the contract did not prejudice Southeastern in either regard. Ample evidence of Collins & Sons' knowledge of the risks associated with a nonfunctioning alarm system and of its assumption of those risks when it dispensed with automatic weekly testing was otherwise presented.

For example, Collins demonstrated he appreciated the risks of an alarm system that did not work when he testified he "would have camped out" in the store had he known the alarm system was not working on the night of the break-in; and Collins acknowledged on cross-examination that he realized at the time he switched monitoring services from 3M Company to the sheriff's office he was foregoing automatic testing of the alarm system. *See State Auto Insurance Co. v. Stuart*, 287 S. C. 235, 337 S. E. (2d) 698 (Ct. App. 1985) (reversible error cannot be based on the exclusion of evidence that is provided by another witness or is otherwise established).

We do not reach the issue of unconscionability concerning Paragraph 7.

## IV.

Southeastern also attacks the trial court's supplemental instruction on the issue of contributory negligence.[1] It argues the supplemental instruction wrongly implies that Southeastern, in order to prove contributory negligence, was required to prove that its alleged negligence alone would not have caused the loss in question. We do not read the challenged instruction that way.

---

[1] In giving the supplemental instruction, the trial court told the jury:
Contributory negligence is an issue which has been raised by the answer of the defendant in this case. It is what we refer to as an affirmative defense .... It must be proven by the defendant by the greater weight of the evidence. It is a defense that, in effect, says this: That even though I the defendant may have been negligent ..., even so, you plaintiff were also negligent and ... your negligence contributed to my negligence so that had you not been negligent, plaintiff, this would not have happened. In other words, it is a concurrence. It is a contribution which comes together and forms the force which results in the incidents alleged .... So that's contributory negligence. Of course, it only comes into play unless and until you should have found the defendant negligent. The burden, of course, [is] first of all upon the plaintiff to prove that the defendant was negligent, and once that is established by the greater weight of the evidence, then the duty is upon the defendant to prove the defense of contributory negligence. In other words, [the defendant] has to prove ... that this would not have happened unless the plaintiff had also been careless and contribut[ily] negligent. That's what it means. The burden is upon the defendant to prove that by the greater weight of the evidence.

Moreover, the supplemental charge must be considered with the trial court's initial charge on contributory negligence, a charge about which Southeastern voiced no complaint. *State v. Todd*, 290 S. C. 212, 349 S. E. (2d) 339 (1986). When it is so considered, no prejudicial error warranting reversal comes into view. *Dickard v. Merritt*, 256 S. C. 458, 182 S. E. (2d) 886 (1971).

## V.

### A.

We do not consider Southeastern's exception concerning the trial court's refusal to charge its Request No. 5. Aside from the fact that the exception does not comply with Supreme Court Rule 4, Section 6, because the exception "mere[ly] reference[s]" a "request to charge," its argument based thereon, which consists of a single sentence near the end of a discussion concerning the sufficiency of the evidence to support the allegation that Southeastern created the live bare wire, is conclusory at best. *See Solomon v. City Realty Co.*, 262 S. C. 198, 203 S. E. (2d) 435 (1974) (an exception will be deemed effectively abandoned where the argument relating to the exception consists of a bare conclusion).

### B.

Regarding Southeastern's complaint concerning the trial court's refusal to charge its Request No. 9, which dealt with assumption of risk, it too does not satisfy Rule 4, Section 6.

In any case, the trial court properly refused to charge the request.

The defenses of contributory negligence and assumption of risk are closely related and frequently overlap. 57 Am. Jur. (2d) *Negligence* § 278 at 669 (1971). Where the defenses of contributory negligence and assumption of risk overlap, the trial court may properly limit its instructions to contributory negligence. *DiIorio v. Tipaldi*, 4 Mass. App. 640, 357 N. E. (2d) 319 (1976).

Here, the defenses overlapped, concerned as they both were with what Collins knew or had reason to know about the alarm system and how it functioned.

Furthermore, we discern no prejudice. *See Grey v. Fibreboard Paper Products Company*, 53 Cal. Rptr. 545, 418

P. (2d) 153 (1966) (in bank) (where the trial court instructed the jury concerning contributory negligence, its error in failing to charge the jury on the doctrine of assumption of risk held not prejudicial where it was not reasonably probable that a result more favorable to the defendant would have been reached had the charge been given).

Affirmed.

GARDNER and CURETON, JJ., concur.