1944

ARCHIE BELL CONSTRUCTION COMPANY, INC., Plaintiff v. Fred Paul NORMAN and Nan N. Norman; Pat Edwards, d/b/a Edwards Electric, Inc.; Dewey Sisk, d/b/a DBS Flooring; Sonny Rabon, d/b/a Sonny's Plumbing; Citicorp Homeowners, Inc.; and The Anchor Bank, Defendants, Of Whom Fred Paul Norman and Nan N. Norman are Appellants, and Archie Bell Construction Company, Inc., and Pat Edwards, d/b/a Edwards Electric, Inc., are Respondents.

(427 S.E. (2d) 689)

Court of Appeals

*John R. Clarke* and *William Isaac Diggs*, N. Myrtle Beach, *for appellants.*

*Frederick C. Parsons, III* and *Stephen C. Ouverson*, Surfside Beach, and *O. Terry Beverly*, Conway, *for respondents.*

Heard Jan. 19, 1993; Decided Feb. 16, 1993.

Reh. Den. March 16, 1993.

GOOLSBY, Judge:

Archie Bell Construction Company, Inc. brought this action against Fred Paul Norman and Nan N. Norman for foreclosure of its mechanic's lien, for breach of contract and for breach of contract accompanied by a fraudulent act. The Normans requested a setoff and counterclaimed for damages. The trial court consolidated Bell Construction's action with an action by Edwards Electric, Inc., to foreclose its mechanic's lien and to recover an amount due for electrical work it performed on the Normans' property as a Bell Construction in the amount of $40,651.24. We affirm the jury verdict in favor of Bell Construction subcontractor. At the close of the evidence, the trial judge directed a verdict in favor of Edwards Electric in the amount of $6,365.50. The Normans appeal the verdict directed by the trial judge in favor of Edwards Electric and the verdict returned by the jury in favor of Bell Construction in the amount of $40,651.24. We affirm the jury verdict in favor of Bell Construction, reverse the directed verdict in favor of Edwards Electric, and remand for a new trial in the case brought by Edwards Electric.

## I.

The first issue, which the Normans apparently direct to both Bell Construction and Edwards Electric, concerns the trial judge's refusal to allow the Normans to

use the deposition testimony of their expert witness, James M. Strickland.

On Monday, October 22, 1990, the sixth day of the trial, the Normans' attorney told the court that Strickland had left the county over the weekend because of the death of his mother in Greenville, South Carolina, more than 100 miles away. Strickland had been subpoenaed. He was to have testified concerning alleged violations of the electrical building code and of faulty installations and repair of electrical fixtures. He was also to testify about a worker being shocked because of allegedly defective work done by Edwards Electric.

The following day, Tuesday, October 23, 1990, the Normans sought to introduce the deposition pursuant to Rule 32(a)(3)(B), SCRCP. The rule provides, "The deposition of a witness . . . may be used by any party for any purpose if the court finds . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing. . . ."

Although he did not say why, the trial judge would not permit the deposition testimony "to go to the jury." The trial judge simply allowed the Normans to proffer the deposition and directed the reporter, as the record reflects, to mark the deposition as an exhibit "for identification purposes only" and to make it "a part of the record."

The trial judge's ruling, contrary to the Normans' argument, was not necessarily inconsistent with his remarks, made the day before, that *to protect it on the record,* I'll let you put certain portions of his deposition [in]." [Emphasis added.] These remarks came directly after counsel for Edwards Electric objected to the admissibility of Strickland's deposition on the ground that "there has been no showing that he is more than 100 miles from the place. . . ."

We find no reversible error, irrespective of what the trial judge meant by his earlier remarks. The Normans made no showing, by affidavit, sworn testimony or other evidence, as they were required to do in the absence of a stipulation regarding Strickland's whereabouts, that Strickland's mother had died and that Strickland, as a consequence, was at the time the Normans proffered Strickland's deposition or at the time the day before when the Normans first asserted Strickland had left the county, "at a greater distance than 100 miles from the place of trial. . . ." Indeed, the trial judge neither

made a determination that the condition existed at the time the Normans proffered Strickland's deposition or at the earlier time nor was he asked to do so. *Cf. Stone v. Guaranty Bank and Trust Co.*, 270 S.C. 331, 242 S.E. (2d) 404 (1978) (case interpreting former South Carolina Circuit Court Rule 87, § D(3), and holding a deposition is not properly admitted in evidence on counsel's bare assertion that, according to his understanding, the witness is out-of-state); 8 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2146, at 458 (1970) ("The existence of the condition is a question to be determined by the trial court at the time the deposition is offered in evidence.").

## II.

The second issue concerns the trial judge's direction of a verdict in favor of Edwards Electric.

When determining whether to grant a directed verdict, the trial judge is required to view the evidence and its reasonable inferences in the light most favorable to the nonmoving party and most strongly against the moving party. Any evidence contrary to or in conflict with the evidence favorable to the nonmoving party must not be considered and the nonmoving party must be given the benefit of every favorable inference that the facts reasonably suggest. In a law case, such as a mechanic's lien foreclosure case, the trial judge does not weigh the evidence and does not decide matters of credibility. *Collins & Sons Fine Jewelry, Inc. v. Carolina Safety Systems, Inc.*, 296 S.C. 219, 371 S.E. (2d) 539 (Ct. App. 1988); *see Glover v. Lewis*, 299 S.C. 44, 382 S.E. (2d) 242 (Ct. App. 1989) (proceeding to foreclose a mechanic's lien is legal in nature).

Viewing the evidence in the light most favorable to the Normans, there existed a question of fact regarding the amount, if any, owed Edwards Electric.

The original contract that Edwards Electric had with Bell Construction called for a payment of $9,085 for electrical work, but various change orders increased the amount due under the contract. Edwards Electric received some payments for its work; however, it claimed $6,365.50 was still owed it under the contract.

The Normans, however, alleged and offered evidence of a

setoff for work either done unsatisfactorily or not done at all.

As to work being done unsatisfactorily, there is evidence that several months after Edwards Electric purported to have substantially completed its work, the Normans were required to retain an independent electrician to correct a problem with a junction box and, as we gather, paid him $3,870.37.

As to work not being done at all, there is evidence, for example, that Edwards Electric did not address a number of items appearing on a punch list, including problems concerning circuit overloads and missing switch and cover plates. Edwards Electric claimed it did not do the latter work because the Normans would not allow it access to the property; however, the Normans expressly denied this claim.

We think the evidence outlined above together with the evidence that the Normans paid $8,350 for electrical work to Bell Construction as of April 1, 1989, warranted the submission to the jury of the question of the net amount, if any, owed Edwards Electric for its work.

Affirmed in part, reversed in part and remanded.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.