491 S.E.2d 577

**James Morgan FUTCH, Respondent,**

v.

**McALLISTER TOWING OF GEORGETOWN, INC., Appellant.**

No. 2697.

Court of Appeals of South Carolina.

Heard March 5, 1997.

Decided July 21, 1997.

Rehearing Denied Sept. 3, 1997.

Marvin D. Infinger and Julie O. Medich, both of Sinkler & Boyd, Charleston, for appellant.

Robert L. Widener and Celeste T. Jones, both of McNair Law Firm, Columbia, for respondent.

HEARN, Judge.

McAllister Towing of Georgetown, Inc., appeals from the trial judge's refusal to grant a directed verdict in its favor in this action for wages by James Morgan Futch. We reverse and remand for entry of judgment in favor of McAllister.

## I. FACTS

Prior to this lawsuit, Futch had worked as a harbor pilot for McAllister Towing for several years. Under his employment contract, Futch received a commission on each vessel brought into Georgetown's port. In December 1992, Futch received a notice from the company advising him that his employment would terminate at the end of 1993. Thereafter, Futch began to make plans with Norman Assey for starting a competing company while continuing to work for McAllister. Acts of preparation included reserving a corporate name, filing registration and insurance forms with the Ports Authority, purchasing two tugboats, meeting with McAllister's clients, submitting a loan application to NationsBank, and seeking letters of intent to employ Futch's new towing service. The commitments contained in these letters represented approximately eighty-five to ninety-five percent of McAllister's customers.

McAllister fired Futch in August 1993 after discovering Futch and an associate had formed a competing company. At that time, Futch had accrued $4,200 in commissions, but McAllister declined to pay this amount.

Futch instituted this action for actual and punitive damages, asserting causes of action under the Wage Payment Act, breach of contract, conversion, and breach of contract accompanied by a fraudulent act. McAllister answered and counterclaimed based upon Futch's disloyalty.

After denying McAllister's motion for directed verdict, the trial judge submitted the case to the jury on Futch's breach of contract claim. The jury awarded Futch $4,200.[1] The trial

---

1. This figure represents an approximation of Futch's ten percent commission of the total revenues received by McAllister ($34,706) during

judge trebled these damages pursuant to the Wage Payment Statute and awarded Futch $3,150 in attorney fees. McAllister appeals, asserting the trial judge erred in refusing its motion for directed verdict. We agree.

## II. SCOPE OF REVIEW

On appeal from an order denying a directed verdict, the appellate courts view the evidence and all reasonable inferences therefrom in a light most favorable to the non-moving party. If the evidence as a whole is susceptible of only one reasonable inference, the motion should be granted. *See Kennedy v. Custom Ice Equip. Co.*, 271 S.C. 171, 174, 246 S.E.2d 176, 177 (1978). In making this determination, the court should not ignore facts unfavorable to the opposing party. *Bultman v. Barber*, 277 S.C. 5, 7, 281 S.E.2d 791, 792 (1981); *Love v. Gamble*, 316 S.C. 203, 207–08, 448 S.E.2d 876, 878–79 (Ct.App.1994).

## III. ISSUES

McAllister argues two issues on appeal. First, McAllister asserts the trial judge should have directed a verdict because the only reasonable inference was that Futch breached his duty of loyalty, thereby barring him from recovering wages. Second, it argues the trial judge should not have trebled damages under S.C.Code Ann. § 41–10–80(C) (Supp.1996) because a good faith dispute existed between the parties concerning Futch's breach of loyalty. We need not reach McAllister's second argument because we find Futch was disloyal as a matter of law, thus forfeiting his compensation. Accordingly, the trial judge should have directed a verdict in McAllister's favor.

## IV. LAW

### A. Wage Payment Act

Our legislature enacted the Wage Payment Act to protect employees from the unjustified retention of wages by the employer. *Rice v. Multimedia, Inc.*, 318 S.C. 95, 98, 456

---

the disputed time period, in addition to $720 Futch argues McAllister owed him under their employment contract.

S.E.2d 381, 383 (1995). To prevent this harm from occurring, section 41–10–50 provides: "When an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days." S.C.Code Ann. § 41–10–50 (Supp. 1996).

Section 41–10–80(C) provides a remedy to the employee when the employer fails to pay wages due. It states:

> In case of any failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

S.C.Code Ann. § 41–10–80(C) (Supp.1996).

## B. Employee's Breach of Loyalty

Absent a contrary agreement, an employee has a right to compete with his employer following the termination of his employment. *Lowndes Products, Inc. v. Brower,* 259 S.C. 322, 335, 191 S.E.2d 761, 767 (1972). An employee, however, has a duty "not to do disloyal acts looking to future competition." *Id.;* 30 C.J.S. *Adverse or Competitive Interest with Employer* § 113, at 182–83 (1992). Although an employee has the privilege of making pretermination plans to compete with his employer, an employee is disloyal if he solicits his employer's customers. *Id.* This duty of loyalty continues undiminished throughout the term of employment. *Young v. McKelvey,* 286 S.C. 119, 122, 333 S.E.2d 566, 567 (1985); *Berry v. Goodyear Tire & Rubber Co.,* 270 S.C. 489, 491–92, 242 S.E.2d 551, 552–53 (1978); 30 C.J.S. *Skill and Care Required of Employee, Duty to Serve Employer Exclusively* §§ 111 & 112, at 181–82 (1992).

The general rule is that an agent guilty of disloyalty to his principal forfeits all compensation.[2] *Ocean Forest Co. v.*

---

2. This rule of law is commonly known as the "faithless servant doctrine." *See, e.g., Roberto v. Brown County Gen. Hosp.,* 59 Ohio App.3d 84, 571 N.E.2d 467, 469 (1989).

We recognize that *Ocean Forest Co. v. Woodside,* 184 S.C. 428, 192 S.E. 413 (1937), involved an agent who was denied his commission on

*Woodside,* 184 S.C. 428, 442, 192 S.E. 413, 420 (1937) (applying former statute); *see also, e.g., Wilshire Oil Co. of Tex. v. Riffe,* 406 F.2d 1061, 1062 (10th Cir.), *cert. denied,* 396 U.S. 843, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969) (adopting rule that an agent forfeits compensation for breach of the duty of loyalty although part of his services may have been properly performed); *American Timber & Trading Co. v. Niedermeyer,* 276 Or. 1135, 558 P.2d 1211, 1223 (1976) (holding employee who breached duty of loyalty must return compensation received during period of disloyalty); *Chelsea Indus., Inc. v. Gaffney,* 389 Mass. 1, 449 N.E.2d 320, 326–27 (1983) (holding disloyal employee "can be required to forfeit the right to retain or receive his compensation for conduct in violation of his fiduciary duties"); *Restatement (Second) of the Law of Agency* § 469 (1958) ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract or service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.").[3]

-----

collecting funds for his employer because he misappropriated those funds to his own use. We disagree, however, with the dissent's position that *Ocean–Forest*'s holding supports Futch's entitlement to compensation because Futch's disloyalty did not occur "in the transaction of his agency." In the dissent's view, unless Futch's job with McAllister included the solicitation of business, his actions in acquiring customers for his own business while in McAllister's employ would not result in his forfeiture of compensation. We do not believe the general principles recited in *Ocean–Forest* about an employee's breach of the duty of loyalty are limited to that case's peculiar facts. Moreover, the subsequent cases of *Lowndes Products, Inc. v. Brower,* 259 S.C. 322, 191 S.E.2d 761 (1972), and *Schuermann v. American KA–RO Corp.,* 295 S.C. 64, 367 S.E.2d 159 (1988), extend the general rule of *Ocean–Forest* beyond the dissent's restrictive interpretation.

3. Some jurisdictions have rejected the bright-line general rule in favor of a balancing test that examines the nature of the employment relationship, the type of disloyalty, and the benefit received by the employer during the period of disloyalty. *See, e.g., Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 494 (Colo.1989) (imposing total bar to compensation if an employee solicits employer's customers); *Hartford Elevator, Inc. v. Lauer,* 94 Wis.2d 571, 289 N.W.2d 280, 287 (1980) (allowing forfeiture to the extent of the difference between the harm suffered by the employer and the benefits employer received during period of disloyalty); *Jackson v. Pleasanton,* 101 Va. 282, 43 S.E. 573, 576 (1903)

■ Since passage of the current Wage Payment Act, our appellate courts have not considered whether wages may be withheld by an employer for an employee's breach of the duty of loyalty. However, section 41–10–80(C) provides only that an employee "may recover" wages due, thus leaving room for the employer to assert viable defenses such as breach of the duty of loyalty. Moreover, the law is clear that an employee is not entitled to benefits and certain types of compensation owed to him upon breach of the duty of loyalty. *See, e.g., Schuermann v. American KA–RO Corp.*, 295 S.C. 64, 66, 367 S.E.2d 159, 160 (1988); *Berry*, 270 S.C. at 492, 242 S.E.2d at 553 (decided under former statute).

## V. DISCUSSION

■ The issue this court must consider is whether, under the Wage Payment Act, an employee's breach of loyalty trumps an employer's duty to pay wages. A plain reading of the Wage Payment Act requires McAllister to pay compensation which Futch was due. However, this statutory requirement does not supplant the employee's common law duties of loyalty and fidelity. *See* S.C.Code Ann. § § 41–10–50, 41–10–80 (Supp.1996); *see also* S.C.Code Ann. § 41–10–60 (Supp. 1996) (requiring unconditional payment of wages conceded due). We find nothing in the Act which directly or indirectly abrogates the common law duty of loyalty owed to an employer by an employee. If that duty of loyalty is breached by the solicitation of customers, we hold that forfeiture of wages is appropriate.

■ Here, the fact that Futch and his associate, Norman Assey, held pretermination meetings with customers prior in time to the operation of their own towing company is not dispositive of whether Futch breached his duty of loyalty to McAllister Towing. Rather, the key inquiry is whether Futch's meetings with McAllister's customers amounted to solicitation. Under *Lowndes*, an employee has the privilege of making preparations to compete with his former employer after termination of his employment. 259 S.C. at 335, 191

(apportioning payment for services properly rendered and untainted by disloyalty).

S.E.2d at 767. This privilege, however, does not extend to the impermissible solicitation of the employer's customers. *Id.*

Applying the holdings of *Young, Berry,* and *Lowndes* to the present case, there was only one reasonable inference at the time the trial judge refused to grant McAllister's motion for a directed verdict: Futch was disloyal as a matter of law because he solicited McAllister's customers prior to terminating his employment. First, Futch's loan application to NationsBank contains two letters of intent from prospective clients. These letters expressly agree to employ Futch's proposed towing service.[4] Second, another letter, which did not accompany the loan application, is addressed to Futch alone and references an employment proposal discussed by Futch and the drafter.[5] Third, Futch's loan proposal expressly refers to the letters of intent as evidence of an "account base" capable of "ensur[ing] an immediate and recommencing revenue source as we begin operations." Indeed, this account base potentially represented eighty-five to ninety-five percent of McAllister's customers, as evidenced by letters of commitment Futch received. Fourth, although Futch stated once that he did not solicit customers, he made his statement in response to a question about his responsibilities while employed with McAllister.[6] Furthermore, Futch's business part-

---

4. A letter from Brunswick Ship Agency, Inc., dated March 22, 1993, states in part: "I am pleased to learn today of plans by Captain Morgan Futch and Captain Norman Assey to start a new towing service in the Port of Georgetown.... [O]ur intention will be to fully support their efforts. We will be recommending to all our principals who use the Port of Georgetown to employ the services of this new towing company." A second letter, dated March 23, 1993, from Inchcape Shipping Services states in part: "I will be glad to employ [Captain Futch's and Captain Assey's] services of their new towing service."

5. This letter, dated February 25, 1993, and written by Georgetown Steel Corporation's Superintendent of Production Planning and Shipping states, in part: "Dear Captain Futch, I have given a great deal of thought to the discussion we had in my office a while back.... If we chose to go with you, it is virtually certain McAllister would leave and not return. That would mean that all of Georgetown's Steel's 'eggs would be in one basket'.... I have no recourse but to advise you that we feel it is in the best interests of all concerned for us to stay with McAllister."

6. The dissent posits that Futch's testimony in itself denying disloyalty was sufficient to submit the case to the jury. When asked whether he

ner, Norman Assey, admitted he and Futch had solicited customers.[7] Finally, even if Futch did not personally solicit McAllister's customers, the evidence clearly shows that Futch's partner acted on his behalf and with his knowledge.

Futch also argues McAllister did not preserve this issue for appellate review because it did not request a specific jury charge on the "faithless servant doctrine" or on the issue of whether Futch's associate, Norman Assey, acted as his agent. The record, however, clearly shows that the jury charges and testimony required the jury to consider the nature of Futch's relationship with Assey, as well as the effect of disloyalty on an employee's right to compensation. The trial judge may not have mentioned the faithless servant doctrine by name, but he amply explained to the jury an employee's duty of loyalty to his employer and the consequences of breaching that duty. Therefore, we do not believe McAllister's acquiescence in the charge resulted in its failure to preserve the denial of its motion for directed verdict for appellate review.

The judgment is reversed and remanded with directions to enter judgment in favor of McAllister Towing.

**REVERSED.**

HOWARD, J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, Judge (dissenting):

I respectfully dissent. I do not agree that McAllister proved as a matter of law that Futch was not entitled to the

---

had ever done anything "disloyal to [his] job responsibilities," Futch responded, "No." We disagree with the dissent that Futch's characterization of his legal culpability was sufficient to submit the case to the jury because it was not an allegation of fact, but instead a legal conclusion. *See Shields v. South Carolina Dep't of Highways and Pub. Transp.*, 303 S.C. 439, 443, 401 S.E.2d 185, 188 (Ct.App.), *cert. denied*, (April 24, 1991) (noting rule that witnesses may not state legal conclusions or opinions of law).

7. In response to a question about whether Assey and Futch sought commitments from McAllister's customers, Assey stated: "That's right.... I think their support is what we got.... It was to secure for ourself [sic] as much as of the business that was coming into the Port of Georgetown that we could get."

compensation he sought in this action. I would also affirm the trial court's award of treble damages and attorney fees under S.C.Code Ann. § 41–10–80(C) of the Wage Payment Act.

As a threshold matter, I believe the question of whether Futch was disloyal was a matter for the jury to decide. Futch's testimony alone denying disloyalty would have been sufficient to warrant the trial court's denial of McAllister's motion for directed verdict. *Collins & Sons Fine Jewelry, Inc. v. Carolina Safety Sys., Inc.*, 296 S.C. 219, 223, 371 S.E.2d 539, 541 (Ct.App.1988) ("Because we are not a jury, we do not weigh the evidence and we do not decide matters of credibility.").

Moreover, while McAllister presented circumstantial evidence that Futch personally solicited McAllister's customers, it produced no direct evidence that he did so. Although it is apparent that many of McAllister's customers became aware of Futch's future plans and committed to him during the time Futch was still working for McAllister, no evidence conclusively demonstrates that Futch was the source of their knowledge or that Futch requested they join him.[1] I do not believe the evidence justified a directed verdict in McAllister's favor, especially considering that McAllister bore the burden of proving Futch's disloyalty.

---

1. The letter from Georgetown Steel, cited by the majority, refers to a discussion with Futch, but does not state who initiated the discussion.

   The majority also concludes that "the evidence clearly shows that Futch's partner [solicited McAllister's customers] on his behalf and with his knowledge." However, I do not believe McAllister's agency argument is properly before us. McAllister did not argue before the trial court that Assey's solicitations alone could constitute a breach of Futch's duty of loyalty, nor did McAllister plead Assey's solicitations as a basis supporting its disloyalty allegations. *See McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 468 S.E.2d 633 (1996) (an argument raised for the first time on appeal is not preserved for appellate review). Moreover, although it is true that Assey testified that all of his actions in furtherance of the new business were done "collaboratively," his testimony is in conflict with Futch's testimony that he never did anything that was disloyal to his job responsibilities with McAllister. *See Archie Bell Constr. Co. v. Norman*, 311 S.C. 84, 427 S.E.2d 689 (Ct.App.1993) (on a motion for directed verdict, any evidence contrary to or in conflict with the evidence favorable to the nonmoving party must not be considered and the nonmoving party must be given the benefit of every favorable inference that the facts reasonably suggest).

Secondly, even assuming that McAllister proved Futch's disloyalty as a matter of law, I believe the case of *Ocean–Forest Co. v. Woodside,* 184 S.C. 428, 192 S.E. 413 (1937), cited by the majority for the proposition that the general rule is that "an agent guilty of disloyalty to his principal forfeits all compensation," actually supports Futch's entitlement to the compensation he sought. In *Ocean–Forest,* the agent was hired for the specific and sole task of collecting a sum of money and his compensation was on a contingent fee basis. After collecting the money, the agent misappropriated it to his own use. Not surprisingly, the court denied the agent's claim for commission.

The court in *Ocean–Forest* did state that the general rule is as indicated by the majority. In the next paragraph, however, the court clarified the rule:

As a general rule, if an agent is guilty of fraud or dishonesty *in the transaction of his agency,* or wilfully disregards an obligation owing his principal which, by reason of his agency, the law devolves upon him, . . . he loses his right to compensation. As stated by the American Law Institute, an agent is entitled to no compensation for conduct which is disobedient or is a breach of his duty of loyalty; such conduct, if constituting a wilful and deliberate breach of his contract of service, disentitles him to compensation for even properly performed services *for which no compensation is apportioned.*

*Id.* at 442–43, 192 S.E. at 420 (emphasis added).

Here, unlike in *Ocean–Forest,* Futch's alleged disloyalty clearly did not occur "in the transaction of his agency." It is undisputed Futch fully and capably performed the duties he was to be paid to do. Because his alleged disloyalty concerned acts unconnected with the duties he was required to perform, that disloyalty should not affect his entitlement to compensation for the work he did perform.[2]

Similarly, it is clear that the compensation at issue in this case is "apportioned" in the contract, as Futch was paid a commission on a per vessel basis. McAllister does not allege Futch failed to perform any of the work for which he seeks

---

2. Whether such disloyalty could give rise to an independent cause of action is another matter.

compensation. Therefore, even if he wilfully and deliberately breached his duty of loyalty, under the rationale of *Ocean–Forest*, he remained entitled to the compensation at issue.

I would also hold the trial court was correct to award treble damages and attorney fees under the Wage Payment Act.

Section 41–10–80(C) (1996) of the Wage Payment Act states:

> In case of any failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

However, an employer is not liable for penalties under the act when there is a good faith dispute between the employee and employer. *Rice v. Multimedia, Inc.*, 318 S.C. 95, 456 S.E.2d 381 (1995). The trial court's ruling on the good faith issue will not be reversed on appeal absent an abuse of the trial court's discretion. *See id.*

McAllister contends its withholding of Futch's commissions was based on a good faith dispute. As I have argued, however, because McAllister did not deny that Futch capably performed the duties he was required to perform and McAllister's allegations of disloyalty were unconnected with those duties, no colorable legal theory supported McAllister's refusal to pay Futch the compensation he had earned.

I would affirm.