THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Roberta Hardy
 Lewis, Appellant/Respondent,
 v.
 Joseph Terrell
 Lewis, Respondent/Appellant.
 
 
 

Appeal From Williamsburg County
 R. Wright Turbeville, Family Court Judge
  George M. McFaddin, Jr., Family Court
Judge

Unpublished Opinion No. 2008-UP-645
 Heard October 9, 2008  Filed November 21,
2008

AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED

 
 
 
 Donald Bruce Clark, of Charleston, for Appellant-Respondent.
 Kevin Mitchell Barth, of Florence and Marian Dawn Nettles, of Lake City, for Respondent-Appellant.
 
 
 

PER CURIAM:  This is a cross-appeal from a divorce decree.  Wife Roberta
 Hardy Lewis argues (1) the family court should have included the husbands
 dental office and dental office parking lot in the marital estate; (2) the
 family court erred in admitting depositions of two witnesses; and (3) the
 family court erred in failing to award her reasonable attorneys fees.  Husband
 Joseph Terrell Lewis argues (1) the family court erred in dismissing his motions
 to dismiss the divorce action and to seek an annulment based on the alleged
 invalidity of Wifes overseas divorce from one of her prior husbands; (2) Wife
 should have been denied alimony based on a legal impediment to the parties
 marriage and her alleged adultery; (3) the family court erred in finding the
 marital home had been transmuted into marital property and in including the
 entire net equity in the marital estate; (4) the family court erred in its
 valuation of certain marital assets; (5) the family court erred in awarding Wife
 certain expert fees; and (6) the terms to effectuate the equitable distribution
 of the marital assets were unfair and constituted an abuse of discretion.  We
 affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
The
 parties married on June 3, 1989; however, the legality of their marriage was an
 issue in this litigation.  This would have been Husbands second marriage and
 Wifes fourth marriage.  At the time of their marriage, Husband was forty-two
 and had an established dental practice.  Wife was thirty-one, had a high-school
 education, and worked for $6.00 per hour before the marriage.  Wife never held
 a full-time job during the marriage; however, she worked part-time in various
 capacities, including one year as a substitute teacher and several years as a
 temporary organist at the parties church.  She also occasionally filled in
 when one of Husbands front office staff members was unavailable, but never
 accepted regular employment with Husbands dental practice despite having been
 offered full-time work there.
The
 parties had one child together in 1990, and Husband adopted Wifes children
 from two of her prior marriages.  At the time of the litigation, the two
 adopted children had attained their majority.
Prior
 to the marriage, Husband purchased the home in which the parties were to reside
 for the duration of their marriage.  The purchase price for the home and
 surrounding acreage totaled $157,600.00.  When he purchased the home, Husband
 paid $27,000.00 down and placed a mortgage for the balance on the property. 
 The mortgage was refinanced in 1994.  Marital funds, consisting primarily if
 not entirely of Husbands earnings during the marriage, were used to pay the
 indebtedness on the home.  In addition, there were several upgrades done to the
 home to make it more family-friendly.
According
 to Husband, the parties relationship began to decline around 1994, about ten
 years before the parties breakup.  Husband contended the tension in the
 marriage resulted from (1) Wifes spending habits and refusal to manage her
 debt responsibly; (2) Husbands anxiety disorder, which he claimed came about
 as a result of overloading himself with financial and physical demands, his
 mothers death, and Wifes refusal to help deal with his stress; (3) Wifes
 decreasing sexual interest; and (4) disagreements between the parties
 concerning financial matters.
On
 July 23, 2004, Wife commenced this action, seeking joint custody of the
 parties minor child, child support, alimony, equitable division of the marital
 property, attorneys fees, and other relief.  On September 10, 2004, Husband
 answered and counterclaimed.  In his responsive pleadings, Husband admitted the
 parties were husband and wife; however, he also raised as a defense and by way
 of a motion to dismiss his allegation that Wifes divorce from one of her
 previous husbands was not valid in South Carolina.  Based on this defense,
 Husband asserted the parties marriage should be annulled and Wife should therefore
 be barred from receiving alimony.  Husband also requested custody of the
 parties child, child support, equitable division of the marital property,
 attorneys fees, and other relief.
On September
 22, 2004, the parties appeared before the family court for a temporary
 hearing.  By order dated September 29, 2004, the court denied Husbands motion
 to dismiss, awarded Husband temporary use of the family home and contents,
 awarded Wife temporary use of the mother-in-law house on the property and its
 contents, awarded the parties temporary joint custody with primary custody to Wife
 and Husband paying temporary child support, awarded Wife temporary alimony, and
 granted other relief.  On September 8, 2005, pursuant to a motion filed by
 Wife, the family court issued an amended temporary order granting custody of
 the parties child to Wife, with Husband paying child support and receiving
 reasonable visitation.
The
 matter came to a final hearing on September 13 and 15, 2005.  At the call of
 the case, Wife moved to supplement her complaint to seek a divorce on the
 ground of a one-year separation and resumption of her maiden name.  Husband did
 not object, and the motion was granted.  The issue of the divorce was
 bifurcated from the remaining issues in the case, and on October 17, 2005, an
 order was filed granting the divorce.
On
 January 23, 2007, the family court issued another order addressing the
 remaining issues of alimony and equitable distribution.  In the order, the
 court noted the parties had settled the issues of custody, visitation, and
 child support, as well as possession and ownership of certain items.  The
 family court went on to find, among other things, (1) there was no marital
 misconduct by either party causing the breakup of the marriage or adversely
 affecting the economic circumstances of the marriage; (2) Wife was not entitled
 to alimony; (3) the home in which the parties resided, though acquired by
 Husband before the marriage, had been transmuted into marital property and was
 subject to equitable division; and (4) neither Husbands dental office
 property, which was acquired before the marriage, nor a parking lot acquired
 during the marriage, was marital property.  Regarding valuation of certain
 assets, the family court adopted the values given by Wifes experts, noting
 Husband, instead of offering his own expert witnesses on these matters, merely
 disputed the values attested to by Wifes experts.  The court then found the
 total value of the marital assets to be $1,434,738.00, which it divided equally
 between the parties.  Although the family court declined to award Wife additional
 attorneys fees beyond what she received at the temporary hearing, Husband was
 required to pay $33,066.25, the entire amount of what Wife claimed in expert
 witness fees, not later than sixty days from the signing of the order.
In
 order to effectuate the division, the family court found Husband owed Wife
 $476,644.50.  Finding Husband would probably would not be able to borrow
 sufficient funds to pay this amount, the court ordered (1) the marital residence
 to be sold; (2) Husband to pay Wife $2,500.00 per month toward her equitable
 division award until the sale of the marital residence; and (3) the balance of
 the equitable distribution award to be paid within ninety days of the sale.
Both
 parties moved to alter or amend the judgment.  Pursuant to these motions, the
 family court issued an amended final order, which was filed May 31, 2007.  In
 the order, the court awarded Wife permanent periodic alimony in the amount of
 $2,000.00 per month,[1] but changed the division of the marital estate to award Husband fifty-five
 percent of the marital assets and Wife forty-five percent.  The expert witness
 fees assessed against Husband were reduced to $23,066.25 based on a finding
 that the services of one of Wifes experts were incurred in connection with
 parcels of property that Wife conceded were not marital.  The deadline for
 Husband to pay the balance of Wifes share of the equitable distribution was
 changed to such time as the marital residence is sold or one year plus forty
 five days, whichever occurs first, with monthly payments of $2,500.00 during
 the interim.  Both parties appeal.
DISCUSSION
Wifes Appeal
1.  We disagree with Wifes
 argument that the family court erred in declining to include Husbands dental
 office in the marital estate.  There was no dispute that Husband acquired and
 paid for the office before the parties marriage; therefore, Wife, as the party
 claiming transmutation had the burden to produce objective evidence that the
 parties considered the asset to be marital.  Deidun v. Deidun, 362 S.C.
 47, 57, 606 S.E.2d 489, 495 (Ct. App. 2004).  
Citing Trimnal v. Trimnal, 287 S.C. 495, 339 S.E.2d 869 (1986), Wife argues she
 has carried this burden because there was evidence that the office had been
 refinanced during the marriage and the loans incurred in the refinancing had
 been paid off with marital funds, namely, Husbands earnings during the
 marriage.  Unlike the indebtedness in Trimnal, however, the indebtedness
 on the asset at issue here was incurred for family purposes, and the reason
 business property was used as collateral for the loans was to enable the
 parties to receive an income tax advantage.  Under these circumstances, we are
 reluctant to disturb the family courts finding that the dental office had not
 been transmuted into marital property; rather, we agree with Husband that the
 financial obligations encumbering this asset amounted to only mere use of
 separate property to support the marriage.  See Johnson v. Johnson,
 296 S.C. 289, 295-96, 372 S.E.2d 107, 111 (Ct. App. 1988) (The mere use of
 separate property to support the marriage, without some additional evidence of
 intent to treat it as property of the marriage, is not sufficient to establish
 transmutation.).  Although marital funds were used to discharge these
 obligations, the specific facts of this case do not support a finding that such
 funds were used to build equity in the property.  Id.  Rather, they were
 used to pay down loans that provided beneficial tax consequences that would not
 have been available but for Husbands decision to use his separate property as
 security.
2.  We agree, however, with
 Wifes argument that the family court should have included the dental office
 parking lot in the marital estate.  Unlike the dental office, the adjoining
 parking lot was acquired during the marriage with marital funds and is
 therefore presumptively marital property.  See S.C. Code Ann. § 20-7-473
 (Supp. 2007) (defining marital property as all real and personal property
 which has been acquired by the parties during the marriage and which is owned
 as of the date of the filing or commencement of marital litigation . . .
 regardless of how legal title is held).  Indeed, Husband asserts in his
 respondents brief that, although the parking lot is arguably marital, it is
 possible the court felt that the Wife had not earned an entitlement to a share
 of this particular property.  This argument, however, apparently ignores the
 principle that Wife did not need to earn an entitlement to property that is
 prima facie marital in nature.  We therefore remand this issue to the family
 court with instructions that the parking lot be included in the marital estate
 and allocated to Husband.
3.  Wife also contends the
 family court erred in admitting over her objection two depositions in which the
 deponents, neither of whom appeared at trial, purportedly gave information to
 support Husbands claim that Wife was not entitled to alimony because she had
 committed adultery.  Wife objected to the admission of the depositions on the
 ground that Husbands attorney, in merely informing the court that he was
 unable to locate the deponents to serve them with subpoenas, did not make an
 adequate showing that the witnesses were unavailable.  We agree. 
Although
 Husband is correct that Rule 25 of the South Carolina Family Court Rules allows
 for a more relaxed approach to discovery, the focus of that rule is on the
 prompt voluntary exchange of information and documents by parties prior to
 trial.  As to the present dispute, which concerns the trial itself, we agree
 with Wife that the bare assertion by counsel that a witness is unavailable is
 not a sufficient showing to admit that witnesss deposition.  See Archie
 Bell Constr. Co. v. Norman, 311 S.C. 84, 86, 427 S.E.2d 689, 691 (Ct. App. 1993) (finding no reversible error in the trial judges refusal to admit a
 deposition in the deponents absence and noting the party proffering the
 deposition made no showing, by affidavit, sworn testimony, or other evidence, as
 they were required to in absence of a stipulation) (emphasis added).[2]
4.  Wife argues the family
 court erred in refusing to award her additional attorneys fees at the final
 hearing, specifically in that the court failed to address the four factors set
 forth in E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816
 (1992), namely, (1) the parties ability to pay their own fees, (2) the
 beneficial results obtained by counsel, (3) the financial conditions of the
 parties, and (4) the effect of the fee on each parties standard of living.  We
 find no error.  
Wife contends she
 incurred a total of $53,247.50 in attorneys fees, of which the family court
 had already awarded her $15,000.00 at the temporary hearing; thus, a balance of
 $38,247.50 remained.  As acknowledged in Wifes appellants brief, the family
 court ordered Husband to pay her $133,109.00, representing one half of the
 liquid assets he received in the equitable division, within forty-five days
 from the signing of the divorce decree.  Although a significant portion of this
 amount was to be paid by way of a Qualified Domestic Relations Order, it
 appears undisputed that Wife would receive within the forty-five day time limit
 an amount in excess of the balance owing in legal fees.  Considering that
 Husband was also required to pay monthly installments on the equitable division
 award, alimony, and child support totaling $6,684.00, there seems to be no
 basis for Wifes assertion that [s]he clearly had no means of paying the
 balance of her attorneys fees.  Finally, insofar as the record indicates that
 considerable pretrial time was spent in fruitless pursuits of concealed assets,
 investment losses, and property that Wife later conceded was nonmarital, we
 disagree with Wifes contention that the family court failed to give due
 consideration to the beneficial results obtained by her attorney.  In our view,
 the family court acted within its discretion in refusing to award additional
 attorneys fees at the final hearing.  See Upchurch v. Upchurch,
 367 S.C. 16, 28, 624 S.E.2d 643, 648 (2006) (stating that in a family court
 matter, [t]he award of attorneys fees is left to the discretion of the trial
 judge and will only be disturbed upon a showing of abuse of discretion).  
Husbands Appeal
5.  Husband first
 contends the family court erred in denying his motion to dismiss Wifes
 requests for separate support and maintenance and alimony.  This motion was
 based on his allegation that the first of Wifes three prior divorces was
 invalid.  As a corollary to this argument, Husband also maintains Wife is not entitled
 to alimony because there was a legal impediment to the parties marriage.  We
 find no reversible error.  
When
 the matter was called for trial on September 13, 2005, Wife moved to amend her
 pleadings to request a divorce on a one-year separation and Husband did not
 object to the grant of this relief.  The issue of the divorce was bifurcated
 from the remaining issues in the case, and on October 17, 2005, the family
 court filed a final decree of divorce that made no mention of Husbands request
 for an annulment.  Husband did not timely move to alter or amend this order;
 therefore, we hold the issue of an annulment was not preserved for appeal.  See Noisette v. Ismail, 304 S.C. 56, 58, 403 S.E.2d 122, 124
 (1991) (holding the court of
 appeals improperly addressed an issue that the circuit court did not
 explicitly rule on when the appellant did not raise the issue in a motion to
 alter or amend).[3]
6.  Husband
 argues the family court erred in finding the family home, which he purchased
 before the parties marriage, had been transmuted into marital property.  He
 maintains the factors cited by the court to support its finding are evidence of
 only mere use of the asset.  In the alternative, Husband contends Wife is
 entitled to only a special equity in the property reflecting the reduction in
 the mortgage during the parties marriage and several improvements, including a
 mother-in-law cottage, a swimming pool, and certain additions to the home. 
 We reject these arguments.
The
 primary question in determining whether an individually owned asset has been
 transmuted into marital property is one of intent, and the party asserting
 transmutation must produce objective evidence showing that, during the
 marriage, the parties themselves regarded the property as common property of
 the marriage.  Ray v. Ray, 296 S.C. 350, 352, 372 S.E.2d 910, 911 (Ct. App. 1988).  Here, although Wifes name was never placed on the title, the home was
 used exclusively for marital purposes, having been purchased by Husband in
 contemplation of the marriage and serving as the marital residence of about
 fifteen years, and marital funds paid for upgrades to the home during the
 parties marriage to make the home more family friendly.  We therefore hold the
 evidence supports the family courts finding that the family home, though
 acquired by Husband before the marriage, had been transmuted into marital
 property.  See Johnson, 296 S.C. at 295-96, 372 S.E.2d at 111
 (including as evidence of transmutation the use of the asset in question exclusively
 for marital purposes and using marital funds to build equity in the property).
7.  We agree,
 however, with Husbands argument that the family court erred in accepting the conclusion
 of Wifes appraiser that the value of the marital home was $800,000.00.  
As the family court correctly noted, Husband himself offered no
 expert testimony on value.  Instead, he merely disputed the valuation by Wifes
 appraiser and offered his opinion as to what the home was worth.  Moreover, we
 recognize the principle that a courts valuation of marital property will be
 affirmed if it is within the range of evidence presented.  Pirri v. Pirri,
 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct. App. 2006).  In this case, however,
 Husband has expressed valid concerns that the family court automatically
 accepted the opinion of Wifes appraiser merely because the appraiser was
 deemed to be an expert and never considered whether that opinion was actually
 supported by the evidence on which it was purportedly based.  Cf. Sauers
 v. Poulin Bros. Homes, Inc., 328 S.C. 601, 605, 493 S.E.2d 503, 505 (Ct.
 App. 1997) (stating the fact that expert testimony was not directly refuted
 does not automatically entitle the party offering such testimony to a directed
 verdict).
The
 appraiser elected to use a sales comparison approach to determining the value
 of the marital home and chose three comparable sales for the appraisal, two in Georgetown County and one in Williamsburg County.  Both of the Georgetown County properties
 were located near rice fields and one of these properties had deep water
 access.  Neither feature is present in the property at issue here.  The third
 property, located in Williamsburg County, where this action is based, had an
 indicated value significantly lower than those assigned to the Georgetown properties.  Based on his view that the higher valued property in Georgetown was closest in similarity to the marital home, the appraiser valued the home at
 $800,000.00.  
We are
 also sympathetic to Husbands concerns that, contrary to the assumptions and
 general principles on which Wifes appraiser relied, the value assigned to the
 marital home did not take into account the terms of the decree itself, which
 set a deadline for Husband to pay Wife her share of the equitable distribution
 in cash.[4] 
 Finally, the appraisers own remarks comparing his assessment to an attempt to
 locate a deer in the woods and his admission he could be as wrong as right strongly
 suggest the family courts finding about the worth of the marital home is not
 supported by the record.  We therefore remand this issue to the family court,
 which, in its discretion, may accept additional evidence from the parties or
 order supplemental information on its own motion.
8.  In his brief,
 Husband challenged the family courts valuation of a hunting tract that was
 included in the marital estate and allocated to him.  At oral argument,
 however, his attorney stated that the hunting tract had been sold and the issue
 is now moot; therefore, we do not address this issue.
9.  Husband
 further argues the family court abused its discretion in ordering him to pay
 Wife the bulk of her equitable distribution in cash.  In support of this
 argument, he cites a statement from the amended final decree in which the
 family court acknowledged he would not be able to borrow sufficient funds to
 make this payment and would have to sell the marital residence to satisfy this
 obligation.  Because it appears from Husbands brief and his attorneys remarks
 before this Court that the crux of this complaint is the value assigned by the
 family court to the marital residence, and because we have remanded several
 issues concerning the equitable distribution to the family court, we hold the
 terms for effectuating the division shall likewise be remanded to the family
 court for reconsideration.  See Ellerbe v. Ellerbe, 323 S.C. 283,
 297, 473 S.E.2d 881, 889 (Ct. App. 1996) (remanding an issue to the family
 court because related issues were also remanded).
10. Husband
 further argues that the family court erred in requiring him to pay expert fees
 totaling $23,066.25, all of which were incurred in relation to the equitable
 division, and suggests as an alternative that these fees be prorated in the
 same percentages as the equitable division award itself.  We agree.
 Litigation
 expenses in the family court are subject to the considerations as counsel
 fees.  Patel v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 124 (2004). 
 In the present case, we hold that the decision to make Husband responsible for
 fees that were in essence a cost to enable the family court to make its
 ultimate award was an abuse of discretion, especially in view of our decision
 to remand one of the issues for which part of the expert fees was incurred and
 the fact that a significant portion of these fees yielded no beneficial result
 to Wife.  We therefore direct the family court on remand to apportion the
 expert fees, including any additional fees incurred during the remand, between
 the parties in the same percentages and their respective shares of the marital
 estate.
AFFIRMED
 IN PART, REVERSED IN PART, AND REMANDED.
SHORT,
 THOMAS, and PIEPER, JJ., concur.

[1]  The amended order states that the Plaintiff shall
 pay to the Defendant permanent, periodic alimony . . .; however, there seems
to be no dispute that Husband, not Wife, was ordered to pay alimony.
[2]  Our determination that the depositions at issue were
 not properly admitted makes it unnecessary to address the arguments that
 Husband raises in his appeal that (1) the depositions should have led to the
 inescapable conclusion that the Wife committed adultery and was not entitled to
 alimony; and (2) the family court therefore erred in failing to consider
 them.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311
 S.C. 335, 340-41, 428 S.E.2d 886, 889 (1993) (noting the appellate court need
 not address remaining issues when its resolution of a prior issue is
 dispositive).  Similarly, we deem it unnecessary to address the argument Wife
 made in her respondents brief that Husband could not assert adultery as a
defense to her claim for alimony because he failed to plead this issue.
[3]  Husband raised the issue in a motion to alter or
 amend after the remaining issues were decided by the family court; however,
 that motion was dated February 2, 2007, more than one year after the decree of
divorce.
[4]  In the appraisal, market value is defined as
 [t]he most profitable price which a property should bring in a competitive and
 open market under all conditions requisite to a fair sale, the buyer and
 seller, each acting prudently, knowledgeably and assuming the price is not
affected by undue stimulus.